Max Dietrich, Defendant in Error, *v.* John, J. Murdock, Charles K. Dickson, and Nathan Kowns, Plaintiffs in Error.

1. *Evidence — Admissibility — Sufficiency — Competency.*— Where the objections offered to the admissibility of a paper in evidence go, not to the competency, but merely to the sufficiency, of the statements therein made, the court committed no error in permitting it to be read.
2. *Corporations — Railroad Companies — Eminent Domain, when granted.*— Where the Legislature, in the exercise of its discretion, delegated to a railroad company the right of eminent domain, the courts ought not to interfere, except in those cases where it is manifest that private interests alone are to be promoted, and private rights violated to the extent of taking the property of one individual and transferring it to another. If, by the terms of its charter, it was made a public corporation for the use and benefit of that particular section of the State where it was located, and was obliged to furnish the means of transportation both for passengers and freight, commensurate with its wants, it must be assumed that the grant of authority to the company to condemn the land necessary for its road-bed was a rightful exercise of legislative discretion.
3. *Corporations—Railroad Companies—Lands—Permission to occupy—Effect of.*— Whether the proceedings of the railroad corporation were sufficient to divest the title of the owner of the land upon which the road was located, or whether he thereby had any notice of an intention on the part of the company to take any portion of his land, is immaterial, if for a number of years after the initiatory steps taken for the location and construction of the road there was no attempt on his part to prevent the execution of the work. In such case it must be assumed that the occupation of his land by the company for the purpose to which it was applied was assented to by him. Being thus permitted to occupy the land, the law would protect the company in the enjoyment of any property used in connection with such occupation, and, if compelled to leave the premises by proper proceedings, would permit such property to be removed.

## Error to St. Louis Circuit Court

This was an action for the claim and delivery of a lot of railroad iron which had been laid down by the Callaway Mining and Manufacturing Company on land in Callaway county, belonging to Kowns, plaintiff in error. The iron was solidly spiked to sleepers, securely fastened to the land. The Callaway Mining and Manufacturing Company was a corporation created by act of the General Assembly of the State of Missouri, passed February 16, 1847 (Sess. Acts 1846–7, pp. 151–3), with power to acquire right of way and construct a railroad from Cote Sans

Dessein, on the Missouri river, to its coal mines in Callaway county.

The company constructed its road and opened it, and, becoming indebted, made its two deeds of trust to Westlake & Filley, trustees, to secure creditors therein named; one dated November 3, 1857, the other November 17, 1857, conveying its road-bed, cars, engines, rails, iron, etc., etc.

The trustees afterward advertised and sold the property, defendant in error being the purchaser of the rails, iron, etc., in controversy. Soon thereafter Kowns removed the iron rails sued for, and shipped them to St. Louis, to Murdock & Dickson, who received them and held them for him at the time they were replevied.

At the trial, which took place at the February term, 1865, the charter of the Callaway Mining and Manufacturing Company was read by defendant in error; also a paper purporting to be the proceedings of a jury summoned to inquire into and assess the damages that might accrue by reason of the building of the railroad and depots contemplated, etc., which need not be set out here.

To the giving of this paper in evidence, the plaintiffs in error objected, for the following reasons:

1. It did not appear that any attempt had been made, previous to impaneling the jury, to agree with the owners of the land over which the track was to pass for compensation for the land taken for said track, and plaintiff (defendant in error) did not declare that he would or offer to give any evidence touching such attempt to make such agreement with said landowners.

2. The report of the jury did not ascertain the land taken from any landowner by metes and bounds, or otherwise.

3. It did not appear from said report what land was taken, or to whom the same belonged, or who was interested in the same.

4. No notice was given to any landholder of the proceedings of the said jury.

5. It appears from the report that the jury only viewed a part of the land condemned.

6. It does not appear from the report that the jury viewed

Dietrich v. Murdock et al.

the land of Kowns (plaintiff in error), or took any evidence respecting the manner in which the making of said railroad would affect the same.

7. The jury did not ascertain by metes and bounds, or otherwise, what part of defendant's (plaintiff in error) land was taken by said railroad, nor its value.

8. It nowhere appears by said report that the company applied for any part of defendant's (plaintiff in error) land, nor whether the jury condemned the part so applied for, or a different part.

9. The jury did not certify the amount of damages which the defendant (plaintiff in error) sustained by reason of the running of the railroad through or over the land, nor did it find the same.

All which objections the court overruled and admitted the paper. The court afterward, sitting as a jury, found a verdict for defendant in error. Other facts necessary to an understanding of the case appear in the opinion of the court.

*T. T. Gantt*, for plaintiffs in error.

I. It appears from the charter of the Callaway Mining and Manufacturing Company that it was no public corporation existing or created for the accommodation of the community, but only a private affair for the benefit of a few persons, and not in any way subserving the public interest. Therefore it was not a corporation in whose aid the right of eminent domain can be exercised or delegated. (2 Kent's Com. 340; Beckman v. Saratoga & Schenectady R.R. Co., 3 Paige, 73; Varick v. Smith, 3 Paige, 159; Smith's Com. on Stat. and Const. Law, § 335.)

II. The act does not provide any judicial proceedings, or any proceedings which can be judicially the subject of review, for divesting the title of the owner of the land needed for a railroad track, under the exercise of the right of eminent domain. (North Missouri R.R. Co. v. Lackland, 25 Mo. 526–8; Backus *et al.* v. Lebanon *et al.*, 11 N. H. 19–26.)

III. The proceedings to divest the title of the landholder and appropriate his property to the use of the corporation were not conformed to the provisions of the charter.

IV. The proceedings of the jury were not of such a nature that

any review of them, or any examination of them by *certiorari* or otherwise, was practicable, and no notice whatever of the pendency of the proceedings appears to have been given to any landholder, either actually or constructively. The want of such notice is fatal. (City of Boonville v. Ormrod, 26 Mo. 193.)

*Sharp & Broadhead*, for defendant in error.

I. The Callaway Mining and Manufacturing Company, by the act of the Legislature of this State, had the right to procure the condemnation of the right of way, construct its road, place its engine, cars, iron rails, switches, and other appurtenances, on the road and operate them. (Sess. Acts 1847, pp. 151–3.)

II. The sheriff and jury had a survey by metes and bounds. They investigated the question of damages — advantages and disadvantages considered — as the law required. The sheriff and jury made the condemnation according to the provisions of the charter, and made a full finding and certificate, which was filed and recorded in the proper office, to which no objection was taken; and after the notice imparted by the filing and recording of the public acts of the sheriff and jury, they were acquiesced in and assented to, and never questioned by any one.

III. Plaintiffs in error cannot now, in this collateral proceeding, call in question the validity of the condemnation or of the proceedings to effect it. (Redf. on Rail. 129; Evans v. Hoefner, 29 Mo. 147–9.) They are estopped in this or any collateral proceeding from questioning the regularity or even validity of the proceedings or condemnation.

FAGG, Judge, delivered the opinion of the court.

The case presented by the record shows the following state of facts: The suit was instituted by the defendant in error, in the Circuit Court for St. Louis county, for the possession of a quantity of railroad iron claimed by him in pursuance of a purchase of the same from the Callaway Mining and Manufacturing Company. This iron constituted a part of the track of said company's road, laid upon the land of Kowns, one of the plaintiffs in error. In 1859 these rails were taken from the road-bed by

Kowns, and shipped to Murdock & Dickson, at the city of St. Louis, to be sold by them for his benefit. This company, being authorized by the terms of its charter to build a railroad from its coal bank in Callaway county to the Missouri river at or near Cote Sans Dessein, proceeded, in the spring of 1851, to acquire the right of way for that purpose. A jury consisting of six men, as directed by the act of incorporation, was summoned by the sheriff of that county, and, with the county surveyor, proceeded to locate the line of the road and assess the damages to the lands upon which it was to be constructed. A certificate of their proceedings was filed in the office of the recorder of deeds for the county, and a certified copy of the same was offered in evidence at the trial on the part of the plaintiff.

The paper being admitted against the objections of the defendants below, presents the first question to be passed upon here.

The objections do not appear to have any reference to the competency of the evidence, but rather go to the sufficiency of the statements to prove that the jury proceeded to discharge its duties in the manner required by the charter. There being no objections to its competency, the court committed no error in permitting it to be read. This is all that need be said upon that point. The next objection on the part of the plaintiffs in error is the refusal of the court to give the following instruction: "The law is declared to be that the proceedings of the jury convened to condemn the road-bed and depot of the Callaway Mining and Manufacturing Company do not appear to have been in accordance with the charter, and that the same are inoperative to divest the title of any owner to the said road-bed."

The Legislature, in the exercise of its discretion in delegating to this company the right of eminent domain, evidently proceeded upon the idea that the public interest was to some extent at least to be subserved by its creation. What the precise degree of its usefulness to the public might be, is not, in our view of the case, necessary to be determined. We think that the courts of the country ought not to interfere with the exercise of this discretion, except in those cases where it is manifest that private interests alone are to be promoted, and private rights violated to the extent

of taking the property of one individual and transferring it to another. The sixth section of the act under which this company claimed its corporate existence declares that "said company shall have the exclusive power to acquire, own, and employ steam power, or animal power, locomotives, cars, and carriages necessary for the transportation of passengers, coal, and every description of personal property on said road for themselves and other persons." Whether the private interests of this company were such as to require the construction of this road, or constituted the main reason for the act of incorporation, with the power conferred by it, is not material. It is enough that, by the terms of the law, it is made a public corporation for the use and benefit of that particular section of the State. The public had a right to demand that the means of transportation, both for passengers and freight, commensurate with its wants, should be provided by the company. Any failure of its duty to the public in this particular, and to transport passengers and freight when offered for that purpose, would have subjected the company to an action for damages. It must be assumed, then, that the grant of authority to the company to condemn the land necessary for a road-bed was a rightful exercise of legislative discretion. We do not consider it to be necessary in this case to go further into an examination of the questions raised on the part of the counsel for plaintiffs in error. We pass by the question as to whether the regularity of the proceedings of the jury can be made the subject of a collateral investigation.

It might be admitted, for the sake of the argument, that all the irregularities complained of do, in point of fact, exist; still, there is no ground upon which Kowns can rightfully claim to be the owner of the property in question. The condemnation of the ground for the proposed road, and the location of the route, were made in the spring of 1851. The company proceeded to construct and operate the road, which is admitted to have been located upon the land owned by Kowns. The report of the attempted condemnation of the property, such as it is, was duly filed in the recorder's office, and this constituted all that was required of the company by its charter. Now, whether these proceedings were

sufficient to divest the title of the owner of the land upon which the road was located or not, or whether Kowns thereby had any notice of an intention on the part of the company to take any portion of his land, is not material. There was no attempt on his part to prevent the execution of the work.

The company was not proceeded against as trespassers, nor in any other form by which his rights might have been asserted and the authority of the company to proceed with the work inquired into. Here was a period of seven or eight years intervening between the initiatory steps taken for the location and construction of the road and the time at which this property is taken possession of by Kowns, without a word of dissent upon his part, and without any claim to the iron. It must be assumed that the occupation of this land by the company for the purposes to which it was applied was assented to by him. Being thus permitted to occupy the land, the law would protect the company in the enjoyment of any property used in connection with such occupation, and, if compelled to leave the premises by proper proceedings, would permit such property to be removed. (See Desloge *et al.* v. Pearce *et al.*, 38 Mo. 588, and cases there cited.)

The instruction was properly refused, and the judgment must be affirmed. The other judges concur.