## Henry Clay Fire Insurance Company v. Barkley.

(Decided October 8, 1914.)

### Appeal from Scott Circuit Court.

1. Insurance—Action to Recover of Loss by Fire—Pleading—Verdict.—Where the proof shows that the whole property destroyed was owned by appellee, and the answer manifested no lack of ownership in the plaintiff, the failure of the petition to allege ownership was cured by the verdict.

2. Insurance—Action to Recover Loss of Barn and Tobacco—Instructions.—In an action to recover for loss by fire of tobacco and the barn in which it was housed, there being nothing in the evidence to indicate that the plaintiff caused or procured another to set it on fire, it was not prejudicial to fail to incorporate in the instructions the idea that the jury should find for defendant if plaintiff caused or procured another to burn the premises.

FORD & FORD and MATHEW WALTON for appellant.

BRADLEY & BRADLEY for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

On March 25th, 1912, the appellant issued to appellee, Barkley, a $2,500.00 fire policy, by which they insured him against loss or damage by fire between the 25th days of March and May, 1912. $1,500 of it was on leaf tobacco while contained in the barn owned by assured, $900 was on the barn, including tobacco sticks, $100 was on the contents of the barn, such as farm implements and feed stuffs. On May 8th, during the term of insurance, there was a total loss by fire of the barn and contents. He sued to recover the full amount insured for, and the jury returned a verdict in favor of appellee in the sum of $1,637.49. The appellant seeks a reversal for error of the court in overruling its demurrer to the petition, and for numerous errors in the instructions given to the jury. It is claimed the petition is defective for failure

to allege ownership of the property contained in the barn. Copy of proof of loss is filed with the petition as an exhibit. This proof of loss states unequivocally that the whole property destroyed was owned by appellee. The only direct averment of ownership in the petition refers to the barn. As to the tobacco and other contents, the petition shows the plaintiff's "loss" by fire, and seeks to recover on the policy "by which it insured plaintiff against loss or damage by fire, etc." While an exhibit will not supply an omitted essential averment in the pleadings, yet they form a part of the pleadings by the express language of Civil Code, Sec. 120, and may, therefore, aid a defective allegation. Newman's Pleading and Practice, 204.

More than this, there was no indication in the answer of lack of ownership by Barkley in any of the property. The proof showed that he owned all of it, and such proof was admitted without objection. There is no pretense of claim to any of it by another. Clearly, then, the verdict cured whatever defect there was in the pleadings.

The case of Hill v. Ragland, 114 Ky., 209, is in point:

"Where the parties have attempted to join an issue to be tried, and which has been tried, however defective in form the pleadings may be, a verdict for the one or the other will be held to cure such defective pleading; that is, will cure them as to their form, supplying all omitted necessary averments, concerning essential facts relied on, provided the proof or admission of such facts were necessarily considered before the verdict could have been rendered." See Title Guaranty & Surety Company v. Commonwealth, 141 Ky., 570; City of Henderson v. Sizemore, 104 S. W., 722; L. & N. v. Taylor, 92 Ky., 55.

Appellant's next objection is urged to the first instruction, which reads as follows:

"The court instructs the jury that they must find for the plaintiff unless they believe that the plaintiff himself set fire to the barn and contents or that said fire was caused by his own carelessness or negligence. If they find for plaintiff, they will be governed as to amount by instruction No. 2."

To understand the objection, it must be explained that appellant's defense went to a fraudulent over-valuation, and a charge that "plaintiff burned the barn to secure the insurance money."

Appellant says that the court should have also told the jury that they should find for the company if they believed the appellee caused, suffered, or procured the barn to be burned. The answer charges:

"That said tobacco barn and its contents were destroyed either through the gross carelessness and negligence of the plaintiff, or were intentionally destroyed by him for the fraudulent purpose of rendering this defendant * * * liable, etc."

There was no proof that Barkley suffered or procured the barn to be burned. If it were not burned by his enemies for the purpose of injuring him, then he burned it himself. The proof showed that Barkley had received several letters threatening him with loss of life, and of loss by fire. His 1910 and 1911 crops of tobacco were housed in the barn. He swears that because of these threatening letters and his refusal to pool his crop, he felt a necessity to guard his tobacco, and that he slept in his barn every night from the time the first crop was housed until the insurance policy was issued. There was evidence of coal oil at the fire; an empty oil bottle nearby, and broken and burned matches; and a dash of coal oil on the side of his stable, which stood close to his tobacco barn. On the other hand, the insurance company points the finger of suspicion at Barkley in the short term of the policy; the fact that he did not insure his home or stable or any other property; that he was in debt; and that his conduct on the night of the fire was out of the ordinary. As for this conduct, it is susceptible of two views, one creditable and the other criminal. He explains the short term of the policy by the fact that he expected to dispose of his tobacco within the two months, and then the agent told him he could continue the insurance for a longer term on the barn as a stock barn at a cheaper rate.

As above stated, there is nothing in the evidence to indicate that Barkley caused or procured another to set the barn on fire. Either he did it or it was the work of his enemies. It was on this basis, as outlined by the pleadings and proof, that the court submitted the question to the jury on the instruction complained of. From these observations, it will be seen and we are of the opinion that the court committed no error, at least no error that was prejudicial, in failing to incorporate in the instruction the idea that they should find for defendant if

the appellee caused or procured another to burn the premises.

The appellant offered no instruction along this line. As it says, the instruction is good as far as it goes, but complains that it does not go far enough.

The following quotations answer appellant's objection to this instruction:

L. & N. R. R. Co. v. Simrall's Admr., 127 Ky., 55: "It is a well settled rule of this court that a litigant cannot complain of instructions correct in themselves though inadequate, given by the court, unless he offers additional instructions to be given in lieu thereof."

Loughridge v. Ball, 118 S. W., 321: "The plaintiffs asked no instruction defining further adverse possession, and as the instruction which the court gave is correct as far as it goes, the plaintiffs cannot complain that other instructions were not given."

Burdett v. Mullin's Exrx., 110 S. W., 855: "The defendant did not ask any other instruction on the trial. Our rule is to not reverse a case for the failure of the court to give any instruction which the appellant did not ask where the instructions which the court gave are correct as far as they go."

Appellant objects to instruction No. 2, which is as follows:

"The court instructs the jury that if they find for the plaintiff under instruction No. 1, they will find for him the following amounts: For the loss of the barn, including tobacco sticks, the value placed thereon in the insurance policy, $900.00; for the loss of the tobacco, three-fourths of the actual cash value of the tobacco destroyed not to exceed $100.00 per acre for the number of acres of tobacco destroyed; for the other contents of said barn they will find for him three-fourths of the actual cash value of same at the time they were destroyed, not to exceed the amount named in the policy $100.00, and the amount, if any, they find for him altogether shall not exceed $2,500.00."

In this connection it draws attention to the following clause contained in its insurance policy:

"The insured shall not recover from the Company more than three-fourths of the cash value of the property at the time of the loss  *   *   *   and the tobacco insured shall not be valued at any amount exceeding $100.00 per acre, the acreage to be determined, if neces-

sary, by a survey of the land upon which the tobacco insured under this policy was grown.''

That the three-fourths value clause in an insurance policy does not apply to the estimated value of real estate insured therein, unless insured was guilty of fraud in fixing the value, is not seriously contested. Caledonian Insurance Company v. Cooke, 101 Ky., 412. But appellant says that the court arbitrarily fixed the value of the real property including tobacco sticks, which it says are personalty, while there is an issue in the pleadings and proof on the question of fraud by plaintiff in fixing the value. The pleadings do make an issue on this question. But, in our opinion, there is no proof to sustain the charge other than difference of opinion in the estimate of value which the witnesses place upon the barn. The fact that Barkley deemed the barn and sticks worth $900 is not an evidence of fraud, when the other witnesses varied in their estimates from $600 to $1,000. It was a new barn, built by Barkley of pine boards and shingled roof, 38 by 48 feet, and 26 feet to the eaves. Some of the witnesses spoke of it as the best barn in that section. There is no pretense that the appellant's agent was ignorant of the threatened danger to appellee's life and property, or of the unsettled conditions in that territory at the time. On the tobacco, the instruction fairly construed, put a double limitation on recovery, viz.: three-fourths of the value, and $100.00 per acre. We cannot agree with appellant's counsel that the only limit was $100.00 per acre. As to whether, on general principles, tobacco sticks are to be considered fixtures and a part of the realty, the facts of the case do not justify an extended inquiry. The appellant, in issuing the policy, seems to have fixed their character in this case by including them with the barn and as a part of it. There is no well defined general rule by which the legal character of fixtures may be determined. The relationship of the litigants, the kind and use of the property, and the intention of the owner as to its use must be looked to rather than the permanent annexation of the property to the freehold. Annexation is not essential to the character of the fixture. Davis' Admr. v. Eastman, 81 Ky., 116.

From appellant's figures, there is only $16.65 difference in the amount of the recovery between the full value and the three-fourths value as applied to the tobacco sticks. If the instruction was erroneous in this

regard, it is too small to justify a reversal and new trial. Neither do we believe the instruction can be said to authorize the jury, in fixing the loss on the tobacco, to take into consideration any market or value thereon other than it had at the time of the loss. As to all the other items in the barn, the jury is told to estimate the value as of the time they were destroyed, and the clear implication is that the same rule should govern as to the tobacco. The whole insurance on the tobacco was $1,500. Appellant says instructions should have limited a recovery on the tobacco to $1,500. Since the verdict was for $1,637.49 for the total loss, including barn, it is clear that the jury kept within the limits fixed by the policy. And, therefore, there was no prejudicial error in the court's failure to so limit the tobacco recovery in the instructions.

In considering this case we have had in mind that portion of Section 134 Civil Code where it says:

"The court must in every stage of an action disregard any error or defect in the proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

Feeling that no error has been committed on the trial affecting appellant's substantial rights, we have decided to affirm the judgment, and it is so ordered.