BACHE, RECVR. v. CENTRAL COAL & COKE COMPANY.

Opinion delivered February 12, 1917.

1.  LEASES—LEASE OF MINE—REMOVAL OF TIPPLE.—The lessee of a mine was given the right to remove certain personal property at the expiration of the lease, which was a part of the mining equipment. The lessee sought to remove a tipple at the expiration of the lease; held, it was proper to submit to the jury the question whether the tipple was a part of the mining equipment and removable as such under the lease, that is, whether it was a trade fixture or a part of the realty.

2.  DEFINITIONS—"MACHINERY."—The word "machinery," as used in a lease, held to include appurtenances necessary to the working of a machine.

3.  LEASES—REMOVAL OF PERSONAL PROPERTY BY LESSEE.—In the absence of an express stipulation in the lease agreement to the effect that the lessee must remove his property from the premises before the expiration of the lease agreement, it will not be held that the right to remove personal property expires upon the exact moment that the lease expires.

4.  LEASES—DAMAGES BY LESSEE—PROOF.—Appellee, lessee of a mine, brought an action for certain personal property, which he sought to remove after the expiration of the lease. Appellant sought to show that the mine was damaged by reason of appellee's neglect. Held, evidence of conversations between appellee and representations of the receiver who took possession of the mine upon the expiration of the lease, were material upon the issues, and was admissible.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little*, Judge; affirmed.

*James B. McDonough*, for appellant.

1.  Plaintiff had no right to tear down and remove the tipple. Jones Landl. & Ten., § 590, 103 Ind. 203. The provisions of the lease as to removal are absolutely controlling. Jones Landl. & Ten., § 713; 41 Conn. 471; 23 Vt. 222; 50 Atl. 1092; 48 *Id.* 38. A tipple is machinery like a railroad track. 86 N. E. 837; 81 N. E. 1103; 64 S. E. 65. It does not come within the

definition of "machinery." 85 Fed. 218; 11 So. 41; 81 Fed. 289; 21 So. 167.

2. Appellee had no right to remove machinery after the lease expired. Jones on Landl. & Ten., § § 711-716; 40 Ind. 142; 153 N. Y. S. 728; 66 So. 54.

3. The court erred in its instructions. They must comply with the pleadings and issues. 82 Ark. 562; 84 *Id.* 67; 85 *Id.* 425; 87 *Id.* 243; 70 N. W. 1110. Whether the tipple was machinery or not was a question of law for the court. Evidence to show the intention with which the tipple was placed on the premises is immaterial and inadmissible. Jones on Landl. & Ten., § 713; 2 Pet. 137; 70 N. W. 1110.

4. There was error in admitting testimony. Boring's payment of taxes and conversations of Boring and Shaleen were all not admissible.

*Oglesby, Cravens & Oglesby*, for appellee.

1. The violation of the lease was submitted to the jury under proper instructions and their verdict is final. They found that the tipple was machinery or trade fixture and removable.

2. It was clearly the intention of both parties to the lease that the tipple was a part of the mining equipment and therefore removable. 56 Ark. 55; 63 *Id.* 625; 73 *Id.* 227; 53 *Id.* 526. It was a trade fixture. 95 Ark. 268; Snyder on Mines, § 1311; 163 Fed. 624; 33 Atl. 95; 101 N. Y. App. Div. 22; 12 Allen, 77; 83 Atl. 269; 52 Am. 817; 44 Atl. 1024; 14 L. R. A. (N. S.) 439; 98 Ark. 597; 2 Sandf. (N. Y.) 202; 161 U. S. 316; 12 Allen (Mass.) 75; 101 N. Y. App. D. 22.

3. The law does not require the lessee to remove trade fixtures and machinery before the expiration of the lease, unless so provided. 2 Snyder on Mines, § 1311; 21 So. 322; 62 Pac. 342; 30 S. W. 907; 33 Atl. 95. The lessee has a reasonable time, after expiration of the lease, to remove. Cases *supra.*

4. The intention was a question for the jury. 70 Ark. 230; 72 *Id.* 500; 53 *Id.* 526.

5. Appellee was not liable for negligence producing "squeezes" before it purchased the property. 24 Cyc. 982. There is no reversible error in the instructions. As a whole, taken together, they state the law and are supported by the testimony.

6. No improper or incompetent testimony was admitted. The trial was free from prejudicial error.

SMITH, J. This is a suit in replevin brought by the Central Coal & Coke Company against John Shaleen, and other defendants, who are the appellants here. The suit was brought to recover possession of certain property belonging to a mine which was owned by the Hartford Coal Company, which mine was by that company leased to the plaintiff Central Coal & Coke Company, hereinafter referred to as the appellee. The Hartford Coal Company, a corporation, leased certain lands to E. W. Hoffman for coal mining purposes. Hoffman assigned the lease to the Hoffman Coal Company, which later failed, and, by proper conveyances, appellee became the owner of all the interest of the Hoffman Coal Company in said lease. The lease, by its terms, expired on November 1, 1914, but, before its expiration, the Hartford Coal Company was placed in the hands of a receiver by the order of the United State Court for the Western District of Arkansas. By agreement this lease was extended to December 10, 1914, and at midnight of that day one John Shaleen took possession of the property for the receiver and, in this manner, became a party to the litigation. He disclaimed any other interest.

At the time Shaleen took charge of the mine, appellee was engaged in removing the property which forms the subject matter of this litigation from the premises. Other property was removed which the receiver did not claim, but the answer filed by the receiver sets out a complete list of the property which he claimed as belonging to the Hartford Coal Company under the terms of the lease, and, although this list is a lengthy one, it does not embrace all the property described in the order of delivery. However, no disagree-

ment has arisen as to the description of the property alleged to have been unlawfully detained. Appellee acquired the title of the original lessee to all of the improvements and equipment in and about the mine by a conveyance which expressly named and included the tipple, and it also acquired all rights of the original lessee, subject to the conditions of the original lease.

The fifth article of this lease contained the following recital:    5. It is agreed by the parties hereto that at the expiration of this lease, whether at the expiration of the regular term thereof or by agreement of the parties, the party of the second part may remove from the said above described tract of land all machinery, pit cars, mine rails and pipe as may have been placed therein by him provided the party of the second part has carried out the terms and covenants of this contract, and all other property on said tract of land at the expiration of the lease aforesaid shall belong to and revert to the party of the first part.

Appellants insist that appellee has no right to the possession of the personal property involved in this litigation for the reasons, that it was not removed from the mine prior to the expiration of the lease, and because the right to remove was made contingent upon the performance of the conditions of the contract, and it is said that these conditions were not performed by appellee and there was, therefore, no right of removal. As to the tipple, it is said there was no right to remove it even prior to the expiration of this lease, and even though the condition of the lease had been performed for the reason that the tipple became, and was, a fixture which under the contract and under the law the original lessee himself would have had no right to remove.

It is said that appellee failed to comply with the provisions of the contract in that it permitted the slopes and room to squeeze down, and permitted water to accumulate therein, and that it destroyed and removed the tipple used in the operation of the mine, and it is argued that by reason of these alleged breaches

of the contract appellee forfeited the right to remove the property herein involved, this right being conditioned upon a compliance with the terms of the contract.

The tipple was removed prior to the expiration of the contract, and the right so to do presents the principal question in the case.

By instruction numbered 4, requested by appellants, the jury was told that, if appellee failed to prevent squeezing in the mine through negligence, and if it negligently permitted water to accumulate in the mine, the jury should find for appellants whatever amount the said mine was damaged, and if appellee so damaged said mine, appellee was not entitled to the possession of the property sued for until said damages are paid.

The evidence is conflicting as to the extent and cause of the squeezing and of the accumulation of water; but as the jury has found under the above instruction that appellee is entitled to the possession of the property, we must assume that there was a preliminary finding that appellee had not breached its contract in the particulars alleged.

At the request of appellee, and over the objection and exceptions of appellants, the jury were told that, if they believed that the tipple was used in connection with the machinery for the purpose of mining coal, and that it was placed upon the leased premises in connection with the hoisting engines, and other machinery and appliances, for the purpose of mining coal, and for the sole use and benefit of appellee in conducting such mining operations, with the intention of removing same, and not with the intention that it was to remain upon the leased premises as a part of the freehold, but should be the property of appellee, and was removed before the expiration of the lease, such removal was not a violation of the lease contract.

This instruction is challenged upon two grounds. The first is that the right to remove depends upon the terms of the contract of lease; and it is argued that the

court should have construed this lease as giving no right of removal. It is also said that, independently of the contract, the tipple is neither machinery nor a trade fixture, but was a part of the freehold.

A witness gave the following description of the tipple. The tipple was constructed by plaintiff of native pine, laid upon a rest, about 30 feet high and 300 or 400 feet long; that you can not remove coal from a mine without a tipple; the tipple is an essential part of the machinery, and connected with it; the machinery on the tipple consists of a shive wheel and bull wheel, which the rope goes around and connects with the cars, the scales and the machines for separating the coal; this machinery is held in place by the tipple, and it is all one connecting whole which is necessary in the operation of a coal mine; the engine and hoister is connected with the tipple by a rope which goes around the bull wheel on the tipple and connects the cars; that it was constructed so that it could be removed and it could be placed on rollers and moved away.

The testimony shows the value of the tipple to have been anywhere from twenty-three hundred to four thousand dollars.

It was shown on behalf of appellee that the tipple was so erected that it could be taken down and rebuilt, and that it was taken down before the expiration of the lease and was removed and rebuilt and is now in use in another mine owned by appellee.

Appellant asked the court to instruct the jury to return a verdict in his favor for the value of the tipple, even though it was removed prior to the expiration of the contract. These instructions were asked upon the ground that the court should have declared, as a matter of law, that the tipple was an expensive improvement which became, and was, a part of the realty.

(1) We are of the opinion, however, that no error was committed in submitting to the jury the question whether the tipple was a part of the mining equipment and removable as such under the lease.

(2)    Learned counsel for appellant argue that the word "machinery" used in the article of the lease set out above, should be construed to mean machines of some kind and that the tipple is not a machine.

It appears, however, that the word "machinery" is a more comprehensive one than the word "machine" and includes appurtenances necessary to the working of a machine.    Bouvier's Law Dictionary.

It is, of course, true that parties by their contracts, may stipulate what machinery and fixtures may be removed, and, when they have done so, such stipulations are controlling.    But, in the case of *National Bank of Wichita* v. *Spot Cash Coal Co.*, 98 Ark. 597, this court, upon the authority of a statement of the law contained in 2 Snyder on Mines, § 1320, said:

"Under the mining law, mining machinery, apparatus and appurtenances placed upon the property by the lessee are not regarded as fixtures that pass with the soil and lease as appurtenances, but as personal property of the lessee that may be removed by him, in the absence of an express stipulation in the lease to the contrary."

We think there is no express stipulation here against the removal of the tipple, and, this being true, it was a question of fact for the jury to say whether the tipple was a trade fixture or a part of the realty.    In support of this view learned counsel for appellee cite the following authorities:    *Demby* v. *Parse*, 53 Ark. 526; *Choate* v. *Kimball*, 56 Ark. 52; *Bemis* v. *First National Bank*, 63 Ark. 625; *Ozark* v. *Adams*, 73 Ark. 227; *Field* v. *Morris*, 95 Ark. 268; *Shellar* v. *Shivers*, 33 Atl. 95; *Washington Gas Light Co.* v. *District of Columbia*, 161 U. S. 316, and numerous other cases.

In Snyder on Mines, volume 2, section 1311, it is said:

"Obviously, the safer course is to provide for the ownership and removal or purchase, by the lessor, of mining machinery, fixtures and appurtenances placed upon the leased mine by the lessee.    Where, however, the parties have omitted this, the general rule, coming

down to us from ancient customs in England, is that such machinery, appurtenances, fixtures and appliances as are placed there by the lessee, and can be removed without serious injury to the mine are his personal property, and are removable by him at the expiration of the lease, or within a reasonable time thereafter, unless there is a clear intention to the contrary. An example of this rule is thus stated in an article in a leading law review: 'Where land is leased for mining purposes, engines and machinery placed on the land, as well as houses for miners to live in temporarily, and any other structures necessary to the carrying on of the business for which the land is leased, and intended for no other purpose, are trade or business fixtures and may be removed by the lessee at or before the expiration of the lease.' "

It is argued that there is no provision in the lease authorizing the removal of any machinery after the expiration of the lease, and it is said, therefore, that a verdict should have been directed in appellants' favor on that account.

We are cited by respective counsel to authorities somewhat conflicting on the duty of a lessee to remove his property from the demised premises before the expiration of the lease. We are not called upon here to decide what restrictions exist upon the right of a lessee to enter for the purpose of removing property from the premises after the expiration of the lease. The instruction requested by appellant upon this phase of the case told the jury that "under the undisputed evidence in this case the plaintiff did not have the right to the possession of the property in controversy at the time the suit was brought."

(3) We think this instruction was properly refused. The proof is that the Hartford Coal Company was contemplating the purchase of the property, and negotiations to that effect were pending, and had they been consummated the property would not have been removed. That appellee began removing the property on October 21, and its representative was not definitely

advised that the prospective purchase was off until about 4 o'clock Saturday afternoon of December 5, 1914. At that time there was an extension of the lease for ten days which made it expire December 10. On Sunday, December 6, at 10 'oclock, appellee began removing its property, working day and night, with three shifts of men, until midnight of December 10, at which minute the lease expired, when appellant stopped the work of removal. At this time the tipple had been removed and there remained only such property as admittedly could have been removed unless the right of removal had been lost by a breach of the contract of lease. As we have stated, the jury found there was no breach of the contract, and appellee was proceeding with great expedition to remove its property, and we think under the circumstances it would be unreasonable and arbitrary to hold that appellee's right to remove its property expired at the instant the hands of the clock marked the expiration of the lease, and especially in the absence of any express stipulation that this right must be exercised before its expiration. Supporting this view, counsel for appellee cite the following authorities: 2 Snyder on Mines, § 1311; *Chalifoux* v. *Potter*, 21 Sou. 322; *Wright* v. *McDonald*, 30 S. W. 907; *Updegraff* v. *Lesem*, 62 Pac. 342; *Shellar* v. *Shivers*, 33 Atl. 95; *Mickle* v. *Douglas*, 75 Iowa 78, 39 N. W. 198.

The evidence does not present a case for the application of the rule that a tenant can not remove fixtures after the expiration of his tenancy, or after the surrender of possession.

(4) Exceptions were saved to the admission of proof of conversations between Boring, who was the superintendent of the mine for appellee, and Shaleen, representative of the receiver, which occurred at midnight when the receiver's representative took possession of the mine. This conversation related to the proposition of leaving a fireman in charge of the pump to keep it running to prevent the accumulation of water in the mine. The purpose of this evidence was

to exonerate appellee from any charge of negligence in the accumulation of water in the mine. It is argued that Shaleen was not present as a witness to contradict any statements in this regard, and that there was nothing in the pleadings to apprise appellants that such evidence would be introduced, and hence there was no reason why Shaleen should have been present, and that, for the same reason, error was committed in admitting testimony in regard to similar conversations between Boring and a Major McClure who executed the orders of the court in taking possession of the mine at the expiration of the lease. The cause of the damages to the mine, and the question whether appellee was responsible therefor, was one of the important questions in the case, and was raised by the pleadings, and we think the evidence was competent.

Various assignments of error relating principally to alleged errors in the instructions are argued by counsel; but the views of the law which we have here expressed render it unnecessary to discuss them.

Finding no prejudicial error, the judgment is affirmed.