## Pennington v. Black.

(Decided Dec. 17, 1935.)

WILLIAMS & DENNY for appellant.

WM. LEWIS & SON for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Prior to the year 1913, the Bond-Foley Lumber Company, hereinafter called the lumber company, owned a large area of timber land in Jackson county. Individual members of this company organized a corporation known as the Rockcastle River Railway Company, hereinafter called the railway company, and during the years 1913 and 1914 acquired by purchase from various landowners a right of way 40 feet in width from East Bernstadt in Laurel county to Bond in Jackson county, a distance of about 16 miles. It at once began and pushed to completion a line of railroad between these two points.

On January 13, 1915, the heirs of Jessie Bowling deeded to the railway company a small tract of land adjoining its right of way, the recited consideration being:

"That the parties of the first part and in consideration that the tract of land hereinafter conveyed shall be used by said parties as a site for a freight and passenger station at which freight and passengers are to be received and discharged, to be known as Bowling and for other railroad purposes. * * *"

It was further provided in the deed that the property was to be used for the purposes indicated "so long as the said party of the second part, its successors or assigns, shall operate its railroad running through the premises of the said first party. * * *"

Immediately thereafter the railway company constructed a freight and passenger depot, partially on this tract of land, but extending over onto the right of way theretofore acquired.

On April 14, 1931, the heirs of Jessie Bowling for the recited consideration of $125 conveyed the same tract of land to W. G. Pennington and in that deed it is recited:

"The boundary of land conveyed herein is the same boundary of land which was on the 13th day of January, 1915, deeded to the Rockcastle River Railroad Company for the purpose use in conducting a passenger and freight station and all other purposes connected in the operation of a railroad so long as said Railroad Company, its successors or assigns should operate said road and this conveyance is not to effect the said Rockcastle Railroad Company in the transaction of its business."

In 1932, the railway company decided to and did abandon its railroad lines.

On January 12, 1934, W. G. Pennington instituted this action against Roy Black and fifteen others, alleging that prior to and at all times since August 1, 1932, he has been the owner and in the actual possession of the land described in the foregoing deeds and the depot building thereon; that in November, 1933, defendants acting together, unlawfully, wrongfully without right, and against the will and without the consent of plaintiff entered upon the land and removed the depot building and converted same to their own use to plaintiff's damage in the sum of $1,500 for which sum he prayed judgment.

By answer and counterclaim, defendants traversed the allegations of the petition. In a second paragraph they pleaded that the deed under which plaintiff claimed the land and the building thereon was champertous. In a third paragraph they pleaded in effect that at the time plaintiff took the deed from the heirs of Jessie Bowling, the Bowling heirs did not claim to own the building or any improvements on the land and that they knew the depot building was the property of the railway company, actually in its possession and being used by it daily; that all the parties knew the railway company had a right to remove the building from the land at any time it so desired, and it was understood by the parties that plaintiff was not getting the building nor were the grantors attempting to convey

it to them; that plaintiff did not purchase or pay anything for the building; that by reason of these facts plaintiff was barred from recovery.

In a fourth paragraph they pleaded that prior to the act complained of, the railway company, together with persons from whom it had purchased the railroad right of way including plaintiff, conveyed the right of way to the state highway commission of Kentucky for highway purposes; that the depot building stood upon a part of the right of way so conveyed, and by reason of plaintiff having joined in the deed, he was estopped from claiming any interest in the building since same was not excepted from the conveyance.

In a fifth paragraph they alleged that the railway company donated the depot building to the trustees of the Greenmount Baptist Church under an understanding and agreement that such trustees would purchase the land upon which the building stood and remodel it so as to convert it into a Sunday school and church building or would purchase a lot nearby and remove the building thereto and that the building was torn down and removed pursuant to such agreement.

The issues were completed by reply traversing the affirmative allegations of the answer and counterclaim. At the close of the evidence for plaintiff, the court upon motion of Roy Black, W. P. Black, and S. P. Browning instructed the jury to find for them. It was thereupon agreed that the defendants might introduce evidence as to whether the railway donated and gave the depot building to the Greenmount Baptist Church or Tom Browning and C. A. Farris, the trustees thereof, and that if the court was of the opinion that the railway company did make such donation and had a right to so do and gave the trustees the right to remove the building, then no other evidence would be introduced.

After hearing the testimony of Tom Browning, C. A. Farris, and N. W. Bond, witnesses for defendants, the court announced it would not be necessary to introduce any witnesses concerning the value of the building or of the question of damages and instructed the jury to find for all the defendants which was done and judgment was entered accordingly. Plaintiff's motion for a new trial having been overruled, he is appealing.

In their original brief, counsel for appellant as grounds for reversal argue (1) that the court committed error in admitting incompetent evidence and in refusing competent evidence over appellant's objections; (2) in sustaining the motion for a peremptory instruction in favor of three defendants at the close of plaintiff's evidence and in directing a verdict for the other defendants at the close of all the evidence.

The evidence referred to in the discussion of the first ground concerns the identity of the various parties participating in the acts complained of in the petition and the value of the lot to which appellant was asserting title. For reasons that will presently appear, evidence referred to was wholly immaterial and therefore appellant was not prejudiced by the court's ruling concerning it.

Concerning the contention that the court erred in directing the jury to find for the three defendants at the close of plaintiff's evidence, it may be said that the record clearly indicates that the court's action was proper, however, this was a matter of no consequence if at the close of all the evidence the court properly directed a verdict for all the defendants.

Counsel for appellant in the original brief maintain that under the deed from Jessie Bowling's heirs to the railway company, the latter merely acquired an easement and assert that when the purpose, reason, and necessity for the easement ceased, it was terminated and extinguished, and further that conveyance of land passed with it the buildings thereon, and in support of these assertions cite 9 R. C. L. 815 and 8 R. C. L. 1067, sec. 122. They argue in effect that when the railway company abandoned its road, all its right and title in and to the building ceased and vested in appellant under his deed.

Counsel for appellees concede that the railway company merely had an easement in the lot and that it would revert to the grantor when appellee ceased to use it for the purpose indicated. They make no question concerning the doctrine announced in R. C. L. and referred to in brief for appellee, but do argue that the depot building was not such a fixture as passed with the land, but was in the nature of a trade fixture which the railway might remove or cause to be removed.

In a reply brief, counsel for appellant argue that the president of the railway company had no right to convey or donate its property and reassert that a conveyance of realty passes title to buildings thereon and say that the deed from the Bowling heirs to appellant passed title to the depot building unless, as contended by appellees, it was a trade fixture. They take issue with appellees on the latter question, but maintain that if it was such a fixture it passed to appellant under his deed for the reason that it was not removed at or prior to the time the easement in the land was abandoned.

Senator N. U. Bond was president and executive manager of both the railway company and the lumber company, and the record discloses that the management and control of both concerns was left practically if not exclusively to him. While the railway company did a general business as a common carrier, its primary purpose was to remove lumber manufactured from timber owned by the lumber company in the vicinity of Bond. After the timber supply had been exhausted, the freight and passenger revenues were not sufficent to justify the company to continue the operation of the road, and in 1932 officers and stockholders decided to abandon it. Appellant testified that notices were posted that the railway company would cease to haul freight, passengers, or mail after August 1, 1932, however, he admitted that it delivered freight to him at Bond about the 10th of August, 1932. Senator Bond testified that the railway did continue to operate trains until the machinery and effects of the lumber company at Bond were removed. It then began to take up the steel rails which it had leased from the L. & N. Ry. Co. and delivered them to the latter at East Bernstadt. He testified that the road was finally abandoned on September 15, 1932. He stated that prior to August 1, 1932, the trustees of the Greenmount Baptist Church approached him with the proposition to buy the depot building and that appellant also approached him with the same proposition. He conferred with other officials of the railway company concerning these proposals and they reached an agreement and authorized him to donate the building to the church. He wrote the trustees of the church that Pennington wanted to buy the building, but the company preferred to and would donate it to the church if the congregation would purchase the land on which

the building stood and so remodel the building as to make it suitable for church and Sunday school purposes, or if the congregation would acquire a lot nearby and move the building to it. Because of difficulties that would be encountered in acquiring the land on which the building stood, a part of which was owned by Pennington, the church accepted the latter proposition made by Senator Bond and purchased a lot preparatory to removing the building; but before the railway company abandoned the property, appellant instituted an action against it asserting title to the Jessie Bowling lot and the depot building and alleging that the company was threatening to remove the building and asked that it be enjoined from so doing. On August 10, 1932, an order was entered in that action reciting that by agreement of parties the application for temporary injunction had been withdrawn without prejudice. It was further agreed and ordered that the passenger and freight depot building in controversy be not removed until the case was finally tried on its merits, and when so tried, the rights of the parties be determined as of the date of the order. Before the question of title to the building had been determined, appellant removed a lock from a door of the depot which he replaced with a lock of his own and began storing merchandise or other personal effects in the building. Thereupon members of the church congregation, including at least some of the appellees, assembled and proceeded to tear down and remove the building to the lot which had been purchased by the church and this suit followed.

The ancient doctrine that anything actually or constructively attached to realty becomes a part thereof has in modern times been greatly relaxed in this and practically all other jurisdictions. In the case of Thomas v. Crout, 68 Ky. (5 Bush) 37, it is said: "The original doctrine was, that fixtures were generally regarded as immovable, and, therefore, as belonging to the landlord, though erected by the tenant, and at his expense; but this doctrine has been modified, in modern times, to meet the wants and necessities of trade and commerce, and the arts and sciences, until now, perhaps, a majority of fixtures erected by tenants may be removed, if done whilst the tenant's dominion over the leased premises still exists, but not afterwards."

Counsel for appellee say they find no case directly in point from this state, but in so far as the right to remove a building from land to which a right, title, or interest has been acquired for the specified purposes for which the building was erected, we find cases directly in point or bearing such close analogy as to be conclusive.

In the case of Evans v. Cropp et al., 141 Ky. 514, 133 S. W. 221, land was conveyed to trustees of a common school district for school purposes, the deed providing for reversion of the title to the grantors if and when the property ceased to be used for such purposes. The grantor conveyed the lands including the school site to another and it passed by several conveyances to Evans, the reversion being included in each conveyance. Under a statute passed subsequent to the original conveyance, all common school property vested in the county board of education and the county board sold the school house which had been erected on the lot to the appellees, giving them the right to remove it. The action was instituted to recover damages for the alleged trespass, Evans claiming the lot had been abandoned by the school authorities and no longer used for school purposes. The court, after discussing the effect of a statute which is not pertinent here, said:

> "The trustees of the district, and their successors in office and title, had the right under the deed of 1883, to build on the lot any kind of structure for school purposes, and to alter or remove it at pleasure. If they removed it before terminating their title, the reversioner had not a ground for complaint. The lot was used for school purposes so long as the house remained upon it, so far as is disclosed by the record. It was only when the house had been removed, and the board determined not to put another on the lot, that it can be said to have been abandoned."

Courts in this and other jurisdictions have refrained from attempting to lay down fixed and definite rules for determining the legal character of a fixture. Annexation to the freehold is not determinative, but the relationship of the parties, the kind and use of the property, and the intention of the owner as to its use are the determining factors. Davis' Adm'r v. East-

ham, 81 Ky. 116; Henry Clay Fire Ins. Co. v. Barkley, 160 Ky. 153, 169 S. W. 747.

In Meigs' Appeal, 62 Pa. 28, 1 Am. Rep. 372, it is said:

> "In determining what is a fixture, the notion of physical attachment is exploded; it is now determined by the character of the act by which the structure is put into its place, the policy of the law connected with its purpose and the intention of those concerned."

See, also, Atchison, T. & S. F. Ry. Co. v. Morgan, 42 Kan. 23, 21 P. 809, 4 L. R. A. 284, 16 Am. St. Rep. 471; Preston v. Sabine, etc., Ry. Co., 70 Tex. 375, 7 S. W. 825; Justice v Ry. Co., 87 Pa. 28; Morgan's Appeal, 39 Mich. 675; Dietrich v. Murdock, 42 Mo. 279; Wagner v. Ry. Co., 22 Ohio St. 563, 567, 10 Am. Rep. 770; Jones v. Ry. Co., 70 Ala. 227, 228; Ray v. Young, 160 Iowa, 613, 142 N. W. 393, 394, 46 L. R. A. (N. S.) 947, Ann. Cas. 1915D, 258; Bache v. Central Coal & Coke Co., 127 Ark. 397, 192 S. W. 225, Ann. Cas. 1918E, 198.

Counsel for appellant recognize the general rule relating to the right to remove buildings, structures, and trade fixtures as between landlord and tenant, lessor and lessee, life tenant and remaindermen, etc., and quote from 3 Words and Phrases, First Series, page 2838, the following:

> "It is a rule of law of great antiquity that whatever is affixed to the soil becomes in contemplation of law a part of it, and is consequently subjected to the same rights of property as the soil itself. 2 Smith, Lead. Cas. (8 Am. Ed.) 206; Wood, Landl. & T. sec. 325. Yet it is also well settled that erections made by a tenant on the demised premises for purposes of trade, as well as for some other purposes, are removable, and that he may exercise his right of removal at his will at any time before the end of the term."

Counsel for appellant, however, contend that none of the foregoing cases or authorities apply here because the building had not been removed before the land was abandoned for railroad purposes. To sustain this contention would be to permit appellant to gain an unwar-

ranted advantage by his own act in enjoining the removal of the building and delaying the determination of the rights of the parties until the railroad had ceased to operate and the tracks were removed.

The conclusion is inescapable that the railway company had the right to remove the building at least until it had abandoned the lot for the purposes for which it was acquired and as held in Evans v. Cropp, supra, could confer that authority upon others. We further conclude that since the failure of the railway company or the parties to whom it donated the building to remove it within the time indicated was due to no fault of theirs but was occasioned by the injunction suit, and orders therein made to abide a determination of the question of title. In such circumstances, the railway company or appellees under its authorization had a reasonable time after the determination of that question in which to remove the building. The fact that they removed it before this was done, though it may have been in violation of the court's orders, worked no prejudice to appellant since it has been determined he was not entitled to the building.

Concerning appellant's argument that there is no record showing the board of directors of the railway company authorized Mr. Bond, as president, to convey the depot building, we deem it sufficient to say that his acts have not been called in question by the officers or stockholders of the corporation and it is manifest in the circumstances that only persons interested in the preservation of the assets of the corporation would be in a position to raise that question.

Judgment affirmed.