CASE 44—PETITION EQUITY—DECEMBER 11.

# Clore v. Lambert.

### APPEAL FROM HENDERSON COURT OF COMMON PLEAS.

1. In no case will a chattel annexed to the freehold by the vendee after his purchase become as to the vendor a part of the realty, and subject to his lien, unless it was so intended by him, or unless it has been so incorporated into the realty that it cannot be removed without injuring the property, and thereby diminishing the vendee's security.

2. Chattels annexed to the freehold prior to the execution of a deed or mortgage, which are essential to its enjoyment, will pass by the deed, and be subject to the vendor's or mortgagee's lien, although not mentioned in the conveyance.

3. But if they are attached to the realty by the vendee or mortgagor after the execution of the deed or mortgage, and are not mentioned therein, they will not be subject to the lien unless so attached that a removal will impair it.

4. The pleadings and evidence are sufficient to authorize the court to reform the contract.

MESSRS. W. LINDSAY AND H. F. TURNER FOR APPELLANT.

1. The machinery erected by Clore & Clay was erected after appellee's conveyance to them. It changed a tobacco warehouse into a planing-mill. It was not mentioned in the deed, and was, after appellant's purchase of it under execution, taken from the freehold without injury to it, and without impairing appellee's lien for his purchase money.

2. It never was subject to appellee's lien; it was not agreed that it should be so, and no intention by either vendor or vendees was ever expressed to that effect. (4 Met., 358; 2d vol. Smith's Leading Cases, 225; 7 Cowan, 321.)

MESSRS. VANCE & MERRITT AND MALCOLM YEAMAN FOR APPELLEE.

1. The machines mentioned in the judgment were fixtures, and subject to appellee's lien.

2. The lien of a vendor, by virtue of his deed, does not differ from that of a mortgage. He has the right not only to subject fixtures to the satisfaction of his lien, but also to prevent their removal from the realty. (2d vol. Smith's Leading Cases, 245; Johnson's ex'r v. Wiseman's ex'r, 4 Met., 359; 6 E. & B., 866; Wallansby v. Milne, 7 C. B., N. S., 115; Ewell on Fixtures, 271, 281, 293; 3 N. H. Rep., 503; 11 Conn., 525; 2 Hill, 142; 1 Bail., 540; 6 Greenl., 151; Winslow v. Merchants' In. Co., 4 Met., 306; 29 Mine, 115; 10 Cal., 258; 7 Harris, 71; 10 Barbour, 217; 2 S. L. C., 289.)

Clore v. Lambert.

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

Appellee sold and conveyed to James F. Clay and J. O. Clore a house and lot in the city of Henderson, reserving a lien for the purchase money. At the time of the purchase Clay and Clore contemplated converting the building into a planing-mill, which fact was known to appellee, but no agreement was had that the property should be used for that purpose. Subsequently the vendees made some addition to the building and placed therein an engine and machinery, suitable to the purpose contemplated at the time of the purchase, and attached it by bolts and screws to the building. While the machinery was thus attached appellant purchased it at execution sale and removed it, and in doing so tore up a portion of the floor, which he replaced, and removed a portion of one wall, but left the building in substantially as good condition as when the sale to Clay and Clore was made and as it was before the removal of the machinery; but this detachment and removal of machinery was not until after appellant had instituted his suit to enforce his lien for the purchase money—claiming that the machinery in controversy was embraced in his lien. The court below adjudged that the lien of appellee extended to the machinery. The correctness of that ruling is the principal matter of inquiry on this appeal.

The deed expresses the consideration to be eighty-five hundred dollars, to be paid at the expiration of ten years, with interest, and concludes: "But it is expressly agreed and understood between the parties hereto, that a lien is to be retained on said property until the whole of the purchase money is paid, and the parties of the second part bind them-

selves to keep the house situated on said lot insured in sol-vent companies for two thirds of its value."

We have carefully examined all the cases cited by counsel for appellee and find that they may be divided into four classes, to-wit:

1st. When the question arises as to what things attached to the realty, at the time of sale, pass as between vendor and vendee;

2d. As to what property attached to the land at the time of the execution of a mortgage is embraced by it;

3d. As to what things attached by the mortgagee, subsequent to the making of the mortgage, will be considered fixtures as between mortgagor and mortgagee; and

4th. As to question arising between landlord and tenant in reference to fixtures placed on the land by the tenant.

In none of the cases, to which our attention has been called, does the exact question here presented appear to have been considered. The cases as to what passes by an absolute sale have reference to the things attached to the realty at the time of the sale, and the questions as to the respective rights of the mortgagor and mortgagee appear to have arisen in states where the mortgage is held to vest the fee in the mortgagee; and even among the authorities on these questions, both in England and America, there is such a conflict that the rights of the parties are difficult to be determined either upon reason or by the weight of authority.

Mr. Ewell on Fixtures, chapter I, speaking in reference to such cases as we have mentioned, says that among the tests to determine what are immovable fixtures are—

"1st. Real or constructive annexation of the article in question to the realty.

Clore v. Lambert.

"2d. Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.

"3d. The intention of the party making the annexation to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, and the policy of the law in relation thereto, the structure and mode of the annexation, and the purpose or use for which the annexation has been made.

"Of these three tests, the clear tendency of modern authority seems to be to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the others seem to derive their chief value as evidence of such intention."

On page 42 in the same chapter it is said:

"Inasmuch as it requires a positive act on the part of the person making the annexation to change the nature and legal qualities of a chattel into those of a fixture, it is quite generally considered that the intention to make the article a permanent accession to the realty, must affirmatively and plainly appear; and if it be a matter left in doubt or uncertainty, the legal qualities of the article are not changed, and the article must be deemed a chattel."

It is also laid down in Jones on Mortgages (sec. 436), that clearer evidence, as between mortgagor and mortgagee, is required to make the articles a part of the freehold when attached after the execution of the mortgage, than if attached before. This is upon the idea that the parties are more likely to have contemplated the articles then attached to the realty as a security, than subsequent accessions—in other words, the probabilities are that the agreement was made with reference to the existing condition of the property.

There is certainly no reason for applying a harsher rule against a vendee in reference to accessions made by him subsequent to his purchase. It may, however, be conceded, as contended by appellee's counsel, that the rule is the same between vendor and vendee and mortgagor and mortgagee in those states where the mortgage conveys the legal title, and in reference to articles attached to the realty at the time of the execution of the deed or mortgage; but it does not. follow that the rights of the mortgagee would, in reference to subsequent accessions made by the mortgagor, be the same in this state where the legal title does not pass and the mortgage is a simple security for the debt. (Douglas v. Cline, 13 Bush; Woolley v. Holt, 14 Bush.)

Deeds to real estate in this state are relieved from doubt, as to what passes, by section 23, article 1, chapter 63, General Statutes, which reads:

"Every deed shall, unless exception be made thereto, be construed to include all buildings, privileges, and appurtenances of every kind attached to the land therein conveyed."

Section 24 of the same article provides that no lien shall exist in favor of the vendor as against a *bona fide* purchaser or creditor for unpaid purchase money, unless the amount remaining unpaid is specified in the deed.

Under these statutes the vendor has a lien, as against creditors and *bona fide* purchasers, only upon the property conveyed, and that upon condition that the amount of the lien is specified in the conveyance. It is a matter of contract; and in order to affect a creditor or *bona fide* purchaser, the extent of the lien must appear by the conveyance. Such a lien, when properly reserved, extends to and embraces permanent improvements subsequently made on the land, and may, as between vendor and vendee, be extended to

embrace chattels affixed by the vendee with the intention to make them a permanent accession to the freehold; but, as between a creditor or a purchaser without notice, the lien should not be extended to embrace such chattels, annexed by the vendee, as may be removed without diminishing the vendor's original security.    In no case will a chattel annexed to the freehold by the vendee after purchase, become, as to the vendor, a part of the realty and subject to his lien unless it was so intended by the vendee, or unless it has been so incorporated into the realty that it cannot be removed without injuring the property and thereby diminishing the vendor's security.

Chattels annexed to the freehold prior to the execution of a deed or mortgage and which are essential to its full and beneficial enjoyment will pass by the deed and will be covered by the vendor's or mortgagee's lien, although not mentioned in the deed or mortgage.    But such chattels attached to the freehold by the vendee or mortgagor, subsequent to the execution of the deed or mortgage and not mentioned therein, will not be subject to the lien of the vendor or mortgagee, unless they are so attached that they cannot be removed without detriment to the original contract lien of the vendor or mortgagee.

When the vendor sells and conveys real estate he vests the vendee with legal title, subject to such lien for purchase money as he may preserve in the deed, and the right to occupy and use in any way and for any purpose that the vendee may elect.    The rents, profits, and absolute enjoyment go with the legal title—the right of enjoyment not to extend to the destruction of the vendor's lien.

As heretofore said the proposition, stated by counsel, on the authority of Mr. Ewell, that the rule is the same, as

between vendor and vendee that it is between mortgagor and mortgagee, is not controverted, so far as it applies to chattels annexed to the realty at the date of the mortgage or deed, nor so far as it applies to subsequent annexations made by the mortgagor in those states where the English rule as to the effect of the mortgage in passing the legal title exists.    But even to that extent the proposition is not supported by authority in this state.    The case of Johnson's ex'r v. Wiseman's ex'r (4 Met.) does not decide what counsel contend.    The court does not decide that the vendor Marshall had a lien for his unpaid purchase money upon the chandeliers put up in the house by the vendee Johnson. Upon the contrary, the inference from the opinion is that such was not the view of the court.    It is said: "But in this case the articles never belonged to Marshall; they were purchased and put up by Johnson after he purchased the house and lot; and the question is, if Marshall had no lien on them, can Buckner, a purchaser under his sale, to enforce his lien, be permitted to hold them?"    But the case was at last decided alone upon a question of estoppel.    The property was sold under decree while the chandeliers were in the house and attached for use, and without notice that they were claimed as personalty and not to pass with the house. The court in the conclusion of the opinion says: "Buckner having purchased in good faith and for a valuable consideration, should take the property with the incidents, and in the condition it was when he purchased."

As we have seen, the question here is whether it was the intention of Clore and Clay to make the engine and machinery permanent accessions to the realty.    If it was not, and there was no agreement between the vendor, appellee, and Clore and Clay that it should be subject to the lien for

Clore v. Lambert.

purchase money, appellee has no claim to it. While it is clear that Clore and Clay bought the property for the purpose of converting it into a planing-mill, and that appellee knew the purpose for which it was purchased, it is equally clear that there was no agreement that the machinery to be put in should be subject to the lien for purchase money, nor was it contemplated by the parties at the time that a lien would exist by operation of law upon the machinery when placed in the building. It is incomprehensible, if appellee looked to the machinery as a security for his debt, that he did not take steps to make it effectual. He could not know that the machinery would be placed in the building—it was not made a condition—he could not know that if placed there it would be so annexed as to become a part of the realty, even within the rule insisted upon for him; and yet, he not only failed to manifest an intention to look to the machinery as a security, but on the contrary negatived that idea by taking a lien upon the property conveyed and stipulating that the property conveyed (not the machinery to be placed in the building) should be kept insured for two-thirds of its value. These facts are sufficient to overbalance the statement of appellee that he looked to the machinery as a security. It is not denied that the intention of the vendees in making the annexation and the manner in which it was done are the most important considerations in determining whether the property in controversy was a part of the realty. The intention is the controlling element, and if the annexation had been so made that a removal of the engine and machinery would have substantially injured the property on which appellee's lien, in terms, was secured, so as to endanger his security, such an annexation might be conclusive of the intention. But from appellee's own testimony, such

was not the case.   What evidence is there then that Clore and Clay intended to make this machinery a permanent accession to the realty?   The burden was upon appellee to show that his lien reached this property, and in this we think he has failed.

In reference to such property as that in controversy, when it may be real or personal according to the caprice of the party owning it, it would be a dangerous precedent to establish that the vendee of real property, on which it happened to be located, could claim a lien upon it as against creditors simply by reason of its physical attachment to the soil on which he held a lien.   Such a lien, to be enforceable, ought to be of a character to give notice to those dealing with the owner of such machinery which they have a right to presume to be personalty.

The pleadings and the evidence were sufficient to authorize the court to reform the contract and to subject the property conveyed before the time at which the note was to become due.              •

Judgment reversed, and cause remanded, with directions for further proceedings consistent with this opinion.