Woolley v. Preston, &c.

82   415
115   333

82   415
110   598

82   415
137   640

CASE 68—TRUSTS—DECEMBER 9, 1884.

# Woolley v. Preston, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

Testatrix devised certain estate to trustees to pay her debts, giving them power to sell, mortgage, etc., and, after the debts were paid, to divide the residue between her children.

1. *Held*—After the debts of the testatrix were paid, the power of the trustees over the property expired. and the children had the right at any time thereafter to compel them to convey the legal title without reservation.

2. The provision of the will that the trustees shall hold the one-half of the share of each son in trust during his life without power on the part of the *cestui que trust* to alienate it or .charge it with his debts, is contrary to the statutes and void.

B. F. BUCKNER FOR APPELLANT.

1. After all trusts are executed, the trustees must convey as the *cestui que trust* directs.

2. A trustee can not hold a dry legal title for the purpose of casting a shadow upon the estate of the *cestui que trust.*

3. A restraint against alienation, where there is neither forfeiture nor remainder over, is void and so is a similar restraint against the creditors of the *cestui que trust.*

4. The agreement made by the trustees after all the trusts were executed to surrender the legal title, is valid and should be enforced.

5. The owner of an equitable estate may decline all offers to protect him against the just claims of his creditors, and may require the trustee to yield the legal title. (Evans v. Jackson, 8 Lim., 217; Mitchells v. Corbett. 34 Beavan, 376; Hubbard v. Elmer, 7 Wendell, 446; Pope v. Elliott, 8 B. Mon.. 56; Hill, Trustees, side-pages 239, 240; Hill, Trustees, 241; Doe v. Nichols, 1 B. & Cr., 336; Harkness v. Thomas. 13 Bush, 23; Doe v. Williams, 2 B. & Al., 84; Doe v. Simpson, 5 East, 462; 1 Perry, Trusts, section 308.; Barnaby v. Griffin, 3 Vesey, Jr.,

273; Cruize's Dig., title 32. chapter 21, section 45; 2 Jarman, Wills,.
609, 610; see also Thompson v. Schenck, 17 Ind., 194; Read v. Read,
9 Mass., 372; Fox v. Phelps, 17 Wend., 393; Earle v. Rowe, 35
Maine, 414; Andrews v. Boyd, 5 Greenleaf, 119; Ayer v. Ayer, 128
Mass.. 575; Butterfield v. Haski·s, 33 Maine, 392; 1 Perry. Trusts,
section 306; Nichols v. Eaton, 91 U. S., 716; *in re* Wilcox, L. & R.,
1 Ch. D., 229; General Statutes, 588; Croxall v. Shererd, 72 U. S.,.
281; 1 Perry on Trusts section 386; Snowden v. Dales, 6 Simmons,
524; Rockford v. Hackman, 9 Hare, 479; Minor's Inst., 2 volume. 27,
90–168; 2 Minor's Inst., book 2, chapter 10, side-page 251, *et seq.;*
Maudlebaum v. McDowell, 29 Mich., 78; McWilliams v. Misley,
2 Serg. and R., 507; Hood v. Oglander. 34 Beavan, 513; 2 Jarman on
Wills. 38; Blackstone· Bank v. Davis, 21 Pick., 43; Hetzel v. Barbee,
69 N. Y., page 1; Lovett v. Gillender, 35 N. Y., 620.)

BULLITT & HARRIS FOR APPELLEES.

1. The trustees, under Mrs. Woolley's will, can not, without doing violence,.
   be called dry or simple trustees.
2. They are required to hold the title during the lives of the testator's.
   children, and for the benefit of those who are to take the remainder.
3. They are given discretion by the sixth clause of the will to allow the
   life tenants to go into possession, and by the eleventh they have the
   power to sell and re-invest.
4. The general purpose of the will is to give the children one-half of the
   property remaining after the debts are paid in fee-simple, and to vest
   the other half in the trustees for the benefit of the children for life;
   remainder to grandchildren. (Perry on Trusts, 51; Anderson v.
   Briscoe, 12 Bush, 346; Blanchard v. Taylor 7 Mon.. 649; 2 Minor's
   Inst., 200; Hill on Trustees, 279; 5·Maddock. 261; 1 Dev. & Battle's
   Eq., 480; 5 Iredell, 576; 7 Beavan, 388; 12 *Ib.*, 517; Perry, Trusts,
   sections 520, 521; Lewin, Trusts, 18.)

CHIEF JUSTICE HINES DELIVERED THE OPINION OF THE COURT.

The question presented is the construction of the will
of Mrs. S. H. Woolley. She died in 1873, possessed of
a large quantity of real estate in Kentucky and in the
State of Arkansas, having personal estate of compara-
tively little value, and being indebted from $45,000 to
$50,000. The will appointed William Preston and
others, executors, and subsequently appellee, A. J.
Ewing, was associated with William Preston, in the

discharge of the executorial and trustee duties imposed by the will.

The pertinent clauses of the will are:

"*Second.* I request my executors to collect the assets of my estate, and pay all just debts which may be legally established and proven, or which they, in their judgment, may believe to be just, according to their discretion."

"*Fourth.* It is my will, if my personal assets should be insufficient to pay my debts or to carry into effect the provisions of this will, then my executors and trustees shall have full and ample power to sell and convey, transfer or assign, mortgage, charge or incumber such part or portion of my estate, real or personal, as they may deem proper, in order to carry out the provisions of this will."

"*Sixth.* It is my will that my executors and trustees shall, after the payment of my debts and settlement of my estate, divide, or cause to be divided, all the rest and residue of my estate, real, personal or mixed, into equal portions, for the purpose of making just and equal partition among my children and their descendants; and after such division shall have been made, I direct my executors and trustees to convey to each one of my children, or their descendants entitled thereto, one-half of such share or purpart, absolutely and in fee-simple; and the other half of such share shall be held or invested in good real estate, in the discretion of my executors and trustees, for the use and benefit of my said child, for the term of his natural life, and after his death for the use and for the benefit of his children, or, in default of children living at the time of his death, to

such uses as such child may declare, limit or appoint, by deed or will; and in default of such appointment, then such moiety of such share shall pass to and vest in the heirs of such child, absolutely in fee. And my trustees may permit such child to retain possession of the moiety of such share, without any account of rents or profits, or to hold, use and occupy the same for life without any account, and without impeachment of waste and without any responsibility of said· trustees therefor. It is my will that this provision shall only apply to the shares of my sons, and not to the shares of my daughters, which are hereinafter specially provided for by me.

"*Seventh.* For the purpose of effecting the partition directed in the foregoing trust, and of carrying into effect the provisions of this will, my executors and trustees may make division of my property, or sell, convey and convert the same into personal property or money, in their discretion, and may re-invest the moieties of the shares of my children in other real estate, in Kentucky or elsewhere, in their discretion, to be held according to the provisions of the foregoing trust, viz: With the rents, issues, profits or income thereof, for the use of such of my children as may be entitled to the moiety of such shares for life, with remainder as provided in the foregoing trust."

"*Fourteenth.* And it is my will that my executors and trustees shall have full power and authority from time to time, in their discretion, to sell and convey, assign or transfer the respective moieties of my sons, mentioned and provided for in the sixth item of this will; and to re-invest, as they may choose, the proceeds

of any such sale in any other real estate, whether pro-
ductive or unproductive, in Kentucky or elsewhere ;
and my said sons shall have no power to sell and con-
vey, mortgage, charge or incumber their respective
moieties in any manner, so as to impede, abridge, impair
or destroy the right of my executors under this will, or
their successors, to sell and convey said moieties and
re-invest the proceeds in any other real estate, in Ken-
tucky or elsewhere, to be held upon the same trusts and
conditions ; and to that end it is my will that the legal
estate in said moieties shall be vested and remain in my
said trustees, with a right of entry upon the lands so to
be held, as against my sons and all other persons whom-
soever.''

Shortly after the death of the testatrix, and on the
suggestion of the trustees, the property designated in
the will as the ''Howard's Grove'' estate and a house
and lot in Lexington, Kentucky, were divided, by agree-
ment between the devisees and the executors or trus-
tees, into equal parts, each devisee taking one part,
with the understanding and agreement that each of the
devisees should advance the sum of $3,500, to create a
fund by which to pay the debts then pressing the estate,
and that the sum so to be advanced would be sufficient
to release, and should release, the respective shares of
all liability to the creditors of the estate.

Under this agreement the devisees entered into pos-
session of the portions assigned to each, and, with the
exception of appellant, deeds were executed reserving
a lien on the part conveyed to secure the payment of
the stipulated sum of $3,500, and, as to appellant, he
paid his portion in cash.

To appellant a deed was tendered by the trustese·
reserving the right in the trustees to sell and reconvey
the property for re-investment, at the discretion of the·
trustees. This deed appellant refused to accept, and
this action was brought to compel the trustees to con-
vey to him, in fee-simple, one-half of the land set aside
to him under this agreement, and the other half for life,.
and at his death for the use and benefit of his children,.
or, in default of children living at his death, to such:
use as he might declare by deed or will, as provided in
the sixth clause of the will. The case exhibited shows
that all debts against the estate are either satisfied, or
that there is in the hands of the trustees ample means
to satisfy them.

The question, then, is whether the will contemplated·
that the trustee, under such circumstances, should
retain any control over the estate, and, if it was so con-
templated, whether such restriction is not in violation
of the provisions of the statute.

The second, the fourth, the sixth and the seventh
clauses of the will quoted, considered without reference·
to the fourteenth clause, which will be hereafter referred
to, clearly establish an intention on the part of the tes-·
tatrix—

*First.* To create a trust to preserve the estate for the·
payment of debts ; and,

*Second.* That after the payment of debts, the estate·
should be equally divided between the devisees, one-
half to be held by each in fee-simple, and the other
half for life, with remainder to the children of the
devisee, and, in default of children, to be at the disposal
of the devisee by will or deed. The testatrix must be

presumed to have known the embarrassed condition of her large estate, and to have realized the necessity for judicious management of the estate in order to preserve of it as much as possible for division, as she indicated, among her children. To accomplish this object, the testatrix conferred upon the executors plenary powers of sale, re-investment, to mortgage the estate as in their judgment and discretion they might see proper. When this duty of managing the estate for the purpose of paying the debts, which appears to have been done, was performed, the trust ceased, and it became the duty of the trustees to convey the naked legal title, which alone remained in them, to the devisees, as provided and limited in the sixth clause of the will. Where, as in this case, there is no duty to be performed by the trustee, and no liability resting on him to look to the manner in which the *cestui que trust* shall use the trust property, the trustee is a simple or dry trustee of the legal title, which a court of equity may compel him to convey to the beneficial owner of the use. (Perry on Trust, sections 520, 521; Thomas v. Harkness, 13 Bush, 23.)

The right of appellant to a conveyance from the trustees to the property in controversy is unquestioned, unless the fourteenth clause of the will, already quoted, forbids it. That clause, when stripped of its verbiage, seems to have two purposes:

*First.* To prevent voluntary alienation by the life tenant; and,

*Second.* To prevent the life estate from being subjected to the debts of the life tenant.

It is unquestioned that the intention of a testator,

when legal, gathered from the whole will, governs the distribution of the estate, and that, within the limits. prescribed by common law and the statutes, the testator has a right to dispose of his property as he chooses.. Beyond those limits there is no power, notwithstanding: the intention is clear, to fetter the estate. In general, when a devise of an estate is absolute and unqualified, whether it be in fee or for life, and is followed by an indefinite provision against alienation, the latter condition is void for repugnancy, and the estate vests in the devisee as if no such qualification or condition had been attached.

Restraint upon alienation, when it is limited in favor of particular persons, when the estate is to terminate upon a certain contingency, when it is to protect the reversion, or the interest of a third party, will be sustained and enforced, for in such cases the limitation is in the nature of a trust for those who may be interested with the devisee of the particular estate. In this case, the devise of the estate for life was absolute. The devisee was expressly given the right to occupy, to use, enjoy and receive the profits of the estate during his life, without responsibility in any way or to any one for the manner in which he might use the estate, and without "impeachment for waste." Under no circumstances and in no contingency was any one except the life tenant to have any interest in the life estate so devised. The unqualified restriction upon alienation, under such devise, was void because repugnant to the estate granted. (Redfield on the Law of Wills, volume 2, pages 287, 288; 29 Mich., 78, Mandlebaum v. McDowell; 2 Jarman on Wills, 38; 21 Pickering, 43;.

Blackstone v. Davis ; 35 N. Y., 620, Lovett v. Gillender.)

The restraint upon alienation, attempted in the fourteenth clause of the will, appears to have been in furtherance of the design, therein manifested, to prevent the life estate of the devisee from being subjected to the payment of the debts of the life tenant. If so intended, it was void, because in violation of the express provision of the statute, independent of the question as to repugnancy.

Section 21, article 1, chapter 63, General Statutes, reads : "Estates of any kind, held or possessed in trust, shall be subject to the debts and charges of the persons to whose use or for whose benefit they shall be respectively held or possessed, as they would be subject if those persons owned the like interest in the property held or possessed as they own or shall own in the use or trust thereof."

As we have suggested, there is no third person, remainderman, reversioner or contingent beneficiary of the particular estate that can in any way be affected by the manner in which the life tenant may use the estate devised. He is *sui juris*, and as such has an unquestioned right, when he alone is affected, to waive any exemption of his estate from liability for his debts. The trustees have no possible interest. Why then allow them to retain the naked legal title, which could operate only to defeat the beneficial use of the estate expressly given to the devisee ?

The statute quoted provides that where one "*owns*" an interest "in the use or trust" of the property, it may be subjected to the payment of his debts, in the

same way as if he owned the property itself. In this case there is an unqualified ownership, by the devisee, in the use of the property.

The only cases in which this court has refused to subject property held in trust to the payment of the debts of the *cestui que trust*, have been cases in which a discretionary power was given to the trustee to withhold all payment or beneficial use to the *cestui que trust*. In such cases there was no ownership by the *cestui que trust* in "the use or trust" of the property; but the "ownership" was in the trustee, with the right to give or withhold at his pleasure. There was no claim of the *cestui que trust* which he could enforce against the trustee, and, therefore, no claim which the creditor, by substitution, could enforce against the trustee. (Davidson's Ex'rs v. Kemper, 79 Ky., 11.)

The prayer of appellant for a deed, under the limitations in the sixth clause of the will, should have been granted ; and the judgment is reversed and cause remanded, with directions to cause the trustees to execute to appellant such a conveyance.