## Showalter, et al. v. G. H. Nunnelley Company, et al.

(Decided January 15, 1924.)

### Appeal from Scott Circuit Court.

1. Trusts—Land Devised in Trust Held Subject to Debts.—A devise of farm land in trust held to require trustee to either give the yearly use or the yearly rentals to the beneficiary, or to turn over to him the entire use of the farm, so that it was subject to the debts of the beneficiary under Kentucky Statutes, section 2355.

2. Trusts—Receiver Properly Appointed in Suit to Subject Land. to Beneficiary's Debt.—In suit to subject interest in land to debts of beneficiary of trust, held, that court did not err in appointing a receiver to take charge of the farm and apply the rents and profits to the payment of judgments where trustee refused to pay the indebtedness, in view of the fact that sales of life estates usually result in a sacrifice of the property.

LLEWELLYN P. SINCLAIR for appellants.

BRADLEY & BRADLEY and FORD & FORD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming on both original and cross appeals.

The principal question on this appeal is whether J. W. Showalter's interest in a Scott county farm is such that it may be subjected to his debts.

The question arises in the following way: The G. H. Nunnelley Company and the firm of Morgan & Crenshaw recovered separate judgments against J. W. Showalter. After executions had been returned, "No property found," they each instituted an equitable action against J. W. Showalter, J. B. Fennell, Jr., his former trustee, and F. B. Showalter, present trustee under the will of B. Showalter, deceased, for the purpose of subjecting J. W. Showalter's interest in the farm in question. The actions were consolidated by agreement. Demurrers to the petitions were overruled, and J. W. Showalter having declined to plead further, it was adjudged that his interest in the farm was subject to his debts, and a receiver was appointed to take charge of the farm and apply the rents and profits to the payment of the two judgments until they were satisfied.

The case turns on the proper construction of the will of B. Showalter, the material parts of which are as follows:

"3rd. The notes and other evidences of indebtedness, other than such as I may hold against my said son, Watterson, and which I have referred to in the second paragraph of this will, I will keep assigned, the assignment being either on the notes, or on separate paper. The proceeds of the notes wherein my son, Jackson W., appears to be the assignee, will be invested by my executor, or in the event he fails to qualify, by such person as may. administer on my estate in the land to be selected by my son, Jackson, and to be located either in what is now the territory of Oklahoma, or in the state of North Dakota. The person making this investment may in his discretion reserve the fund aforesaid, arising from these notes, enough to improve the lands so purchased and to buy stock, farming implements, etc., consulting Jackson with reference to the amount. The stock, farming implements, etc., so purchased will belong absolutely to my son Jackson. The notes assigned to my son, Watterson, will pass and belong absolutely to him.

"The title to these lands to be purchased as above provided, will be held by a trustee, the conveyance to be made to him, the trustee to be selected by my son, Jackson. This trustee shall have the discretionary power to give the yearly use of said lands to said Jackson, and to give him also the proceeds of their yearly rentals. Should he do either, he will be discharged of all liability for the use or the rental as the case may be. Should he do neither, he will loan on good mortgage security the rentals after paying taxes, meeting repairs and other necessary expenses, and making other necessary improvements. But he may at any time in his discretion pay over these accumulated rentals to my son Jackson, and be discharged of liability therefor. Should they not be paid over, they will be held by him for the benefit of the children or grandchildren of my son Jackson, and may be used for their education and support. . . .

"Fourth. I will to my wife the household goods and furniture and one-third of my home farm, situated about one and one-third miles south of Georgetown, Kentucky, known as the Smarr farm, for and during her natural life. Should she wish her third to be set off to her in the land so as to include the residence and improvements, garden, orchard, etc., it shall be done. The remaining two-thirds will be held by the trustees to be selected by my son Jackson during the natural life of my said son. This trustee

can in his discretion give to my son Jackson the yearly use and possession of these two-thirds, or the yearly rental proceeds thereof, after the payment of taxes and making the necessary repairs. On the death of my said wife, the said trustee will hold the title to the entire farm and may in his discretion give the yearly use thereof, or the yearly rentals thereof, to my said son, Jackson, and be discharged from liability therefor, or he can, if he prefers, turn over to my said son the entire use of said farm, leaving him to pay the taxes and make the repairs. On the death of my said son, Jackson, this home farm, as well as the lands to be purchased as above provided, will pass to and belong to his then living children, and if one or more of his children be then dead leaving a child or children, such child or children will receive the portion that the dead parent would receive if living.''

We are concerned only with appellant's interest in the farm referred to in the fourth paragraph of the will. This farm consists of 323 acres and is located near Georgetown. For several years J. B. Fennell, Jr., served as appellant's trustee. On July 18, 1921, he resigned, and appellant's son, F. B. Showalter, was appointed and qualified in his stead. Appellant's mother is no longer living.

Section 2355, Kentucky Statutes, is as follows:

''Estates of every kind held or possessed in trust, shall be subject to the debts and charges of the persons to whose use, or for whose benefit, they shall be respectively held or possessed, as they would be subject if those persons owned the like interest in the property held or possessed as they own or shall own in the use or trust thereof.''

In view of this statute, schemes which permit a *cestui que trust* to enjoy the income from property, and at the same time repudiate his debts, are not favored, and the only cases in which we have refused to subject property held in trust to the payment of the debts of the *cestui que trust* have been those in which a discretionary power is given to the trustee to withhold all payment or beneficial use from the *cestui que trust*. Woolley v. Preston, 82 Ky. 415; Louisville Tobacco Warehouse Co. v. Thompson, 172 Ky. 350, 189 S. W. 245. With this rule in mind, let us examine the provisions of the will. With respect to the farm to be purchased in Oklahoma or North Dakota, the trustee is given the discretionary power to give

the yearly use of said land to appellant, and to give him also the proceeds of their yearly rentals. Should he do either, he is discharged from all liability for the use or the rental, as the case may be. Should he do neither, he is required to loan on good mortgage security the rentals, after paying the taxes, repairs, etc., with power at any time in his discretion to pay the accumulated rentals to appellant. In case they are not paid over, they are to be held for the benefit of the children or grandchildren of appellant. On the other hand, the powers of the trustee with respect to the farm in question are, at his discretion, to give the yearly use thereof, or the yearly rental thereof, to appellant, and be discharged from liability therefor, or, if he prefers, to turn over to appellant the entire use of the farm, leaving him to pay the taxes and make the repairs.

In other words, the trustee in the one case is given the discretion to withhold the entire income or beneficial use from appellant and to accumulate the profits, in which event there is a devise over to the children or grandchildren of appellant, while in the other case he is vested with the discretion to give the yearly use, or yearly rentals of the farm to appellant, or to turn over to appellant the entire use of the farm with no devise over in case he fails to do so. In view of the care with which the will appears to have been written and of the sharp contrast between the two provisions, the difference in the language employed cannot be attributed to mere inadvertence, but evinces a clear intention to give the trustee an absolute discretion in the one instance, and a limited discretion in the other. We, therefore, conclude that the trustee was to either give the yearly use, or the yearly rentals of the farm, to appellant, or to turn over to appellant the entire use of the farm, and as appellant may require this to be done, it follows that his interest in the farm was such that it may be subjected to his debts.

But it is insisted that the court erred in appointing a receiver in the absence of allegation or proof that the income or profits from the farm in question were in danger of being lost, removed or materially injured. On the other hand, the creditors prosecute a cross appeal and insist that the court should have ordered a sale of appellant's interest in the farm for the purpose of satisfying their claims. It does appear that appellant had the power to select the trustee, that he selected his own son,

that his son refused to pay the debts in question and mortgaged the produce of the farm. Manifestly, if the control of the land were left in his hands, he could manage it in such a way as to defeat the claims of the creditors. Clearly, the creditors were entitled to some relief, and the only relief available was a sale or the appointment of a receiver. As sales of life estates usually result in a sacrifice of the property, and therefore operate to the prejudice of both creditor and debtor, it is the better practice, we think, to appoint a receiver and not order a sale until after the lapse of a reasonable time, during which the efficacy of the receivership may be fully tested, and as the chancellor adopted this plan, which was more favorable to appellant than an immediate sale of his interest in the property, we perceive no reason for reversing the judgment either on the original or cross appeal.

Judgment affirmed both on the original and cross appeals.