# Susanne De Charette's Guardian, et al. v. Bank of Shelbyville, et al.

(Decided March 4, 1927.)

## Appeal from Shelby Circuit Court.

1. Courts—Judicial Opinion Must be Considered as a Whole, Not Distorted by Considering Only Selected Phrases.—The language of an opinion must be construed as a whole, and its meaning should not be warped by selecting separate expressions, but must be reached by a consideration of them all.

2. Wills—Will Devising Farm, Directing Payment of Rents and Profits to Daughter, and Granting Her Power to Dispose of Farm by Will, held to Create Life Estate Only.—Will devising farm in trust, and directing that rents and profits should be paid to testatrix's daughter, or giving her right to control and operate farm, if living thereon, and also granting her power to dispose of farm by will, held to create life estate in daughter.

3. Wills—Life Estate Under Will Held Subject to Debts of Devisee (Ky. Stats., Section 2355).—Under Ky. Stats., section 2355, a life estate of devisee under will held subject to the payments of the debts of the devisee.

4. Mortgages—Order of Sale in Foreclosure Proceedings, Without Making Tenant Party, Held Not Error, Where Tenant's Lease Not Shown Valid.—Where, in suit to foreclose mortgage on realty devised in trust, trustees intervened setting up lease, order of sale without making tenant a party held not error, where lease was not shown to have been made with beneficiaries' consent, which was necessary under will devising estate.

5. Appeal and Error—Chattel Mortgagee, in Foreclosure Proceedings, May Not Protest Against Sale of Certain Chattels, Because They Belong to Third Parties.—Chattel mortgagees, not being prejudiced if court orders sale, in foreclosure proceedings, of chattels belonging to third parties, may not complain of such order.

6. Fixtures—Tests to Determine Whether Fixtures are Legally Immovable are Annexation to Realty, Adaptation to Use With Particular Realty, and Intent—"Fixture."—In determining whether "fixtures" are in law immovable, the three general tests are annexation to the realty, actual or constructive, adaptation or annexation to the purpose to which that part of the realty to which it is connected is appropriated, and intention to make article a permanent accession to the freehold.

7. Fixtures—As Between Landlord and Tenant, Law Favors Holding Domestic and Ornamental Fixtures as Personalty.—The law allows the greatest latitude, as between landlord and tenant, in favor of presumptions that particular fixtures are to be considered personalty rather than realty, especially class known as domestic and ornamental fixtures.

8.  Fixtures—Law Favors Holding Fixtures Personalty as Between
    Life Tenant and Remainderman.—Presumptions that particular
    fixtures are to be considered personalty are favored as between
    life tenant and remainderman, especially as to what are known as
    domestic and ornamental fixtures.

9.  Fixtures—Lighting Plant, Installed by Life Tenant, Held Domestic
    "Fixture" and Covered by Chattel Mortgage on Personalty.—Light-
    ing plant, installed in a building on a farm by owner of life estate
    and affixed by machine bolts imbedded in a concrete base, and
    easily removable without injury to premises, held removable do-
    mestic fixture and covered by life tenant's chattel mortgage on
    personalty.

10. Fixtures—Cream Separator and Milling Plant, Installed by Life
    Tenant, Held Removable Fixtures and Covered by Chattel Mort-
    gage on Personalty.—Cream separator and milling plant, installed
    on farm by owner of life estate for use in dairy business, easily
    removable and generally considered personalty, held removable
    fixtures, and hence covered by life tenant's chattel mortgage on
    personalty.

11. Appeal and Error—Failure to Cancel Trust Deed, in Mortgage
    Foreclosure Suit, Held Not Ground for Complaint, Where Judg-
    ment Reserved Case for Further Proceedings.—In suit to fore-
    close a mortgage, failure of court to order certain trust deed can-
    celed held not ground for complaint by mortgagor, where the
    judgment reserved the case "for further orders and proceedings
    as to all matters not hereinabove adjudicated and as may here-
    after be necessary."

12. Appeal and Error—Where Proceeds from Sale of Mortgaged Prop-
    erty Were Insufficient to Pay Secured Creditors, Mortgagor Can-
    not Complain Because Unsecured Creditors are Included in Mort-
    gage Foreclosure Judgment.—Mortgagor cannot complain of judg-
    ment ordering sale of mortgaged property, which sale did not
    bring enough to pay the secured creditors, because such judgment
    put certain unsecured creditors on a par with those signing the
    mortgage.

13. Appeal and Error—Mortgagor Cannot Complain Because Certain
    Creditors, Parties to Mortgage, Were Not Included in Judgment
    of Sale, Where Proceeds Did Not Pay Secured Creditors.—Mort-
    gagor cannot complain because the judgment ordering the sale of
    the mortgaged property did not include certain creditors who
    were parties to the mortgage, where proceeds of mortgaged prop-
    erty were insufficient to pay secured creditors.

14. Appeal and Error—Pleadings Omitted from Record Held Presumed
    to Support Judgment.—Where appellant complained of judgment
    enforcing a mortgage, but the pleadings on which such judgment
    was based were omitted from the record, it is presumed that the
    pleadings supported the judgment.

15. Marshaling Assets and Securities—Enforcing Mortgage on which
    Mortgagee Had Sole Lien Before Enforcement of Another on
    which Many Had Liens Held Proper.—Where mortgagee had sole

lien on one property and had mortgage on another in common with several others, held proper for court to order enforcement of sole lien before the other mortgage was enforced.

MATT J. HOLT and FOSTER HOLT for appellants.

GILBERT PICKETT & MATHEWS, W. PRATT DALE and ALEX. G. BARRET for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

This is the second appeal of this case. The first appeal, under the style of DeCharette v. St. Matthews Bank & Trust Co., was decided by this court on May 11, 1926. The opinion may be found in 214 Ky. 400, 283 S. W. 410, where a very clear statement of the issues involved and the proceedings had in the litigation up to that time may be found. Before the mandate of this court in that appeal was filed in the lower court, Mrs. Sue T. Henning, without notice to anyone, applied to the Shelby county court to have trustees appointed for her under the will of her mother, Mrs. Betty Merriwether, the construction of whose will was involved in that appeal. The Shelby county court thereupon appointed J. Archie Bell and L. W. Ross such trustees. On August 12, 1926, the appellee herein, St. Matthews Bank and Trust Company, filed an amended answer, counterclaim and cross-petition in this suit, wherein it alleged that of the $60,000 of bonds authorized by the deed of trust dated July 1, 1924, $30,150 had never been issued; that of the bonds which had been issued $20,300 thereof had been delivered to creditors who were already secured by the mortgage of August 11, 1923, which covered the same property as was embraced in the deed of trust of July 1, 1924, the remaining $9,550 of bonds having been delivered to four creditors whose claims were not secured by that mortgage. The bank called on all of these bondholders to set up any claim they might have under these bonds. As the opinion on the former appeal decided that Mrs. Henning did not own the fee or any greater interest in the Allendale farm than that which she had put in lien by the mortgage of August 11, 1923, it is apparent that the creditors who were secured by that mortgage gained nothing by way of security because of the delivery to them of the bonds mentioned. Although the four creditors who were not parties to the 1923 mortgage may

technically have had a second lien on the property, set out in the deed of trust of 1924, to the extent of the amount of the bonds held by them, a question we need not decide, yet, as Mrs. Henning's interest in that property, all of which was also covered by the mortgage of 1923, did not, as we shall presently see, bring enough to pay the claims secured by that mortgage; these four creditors likewise gained nothing by way of security by reason of holding these bonds.

By the mortgage of 1923, Mrs. Henning put in lien for her creditors, who were parties to that instrument, her interest in the Allendale farm, the character of which interest was determined in the former appeal, and also her interest in what is known in this record as the Merriwether farm, which interest she had inherited from her uncle, Richard Merriwether, under his will. After the filing of the amended answer of the St. Matthews Bank and Trust Company, and while the case was pending for a judgment of foreclosure of the mortgage of 1923, so far as the realty embraced in that mortgage was concerned, the circuit court ordered under the consent judgment of May 23, 1925, by which as we held on the former appeal, Mrs. Henning was bound, a sale of the personal property covered by that mortgage. Mrs. Henning and her granddaughter, the infant appellant, Susanne DeCharette II, undertook by pleading to prevent this sale of the personal property, their efforts being directed particularly to four items incorporated in the proposed sale. Their position was that these items were not personal property, but fixtures so attached to the real estate as to be a part of the freehold. These four items were the milling plant, the platform scales, the cream separator, and the lighting plant. Although the court sustained the demurrer of the bank and other creditors to these pleadings, yet after the sale in which these four items were sold Mrs. Henning and the infant appellant again raised the question by way of exceptions to the commissioner's report. On these exceptions the court heard proof and decided the controversy on its merits, holding that the contention of Mrs. Henning and the infant appellant as to the platform scales was correct; but as to the cream separator, lighting plant, and milling plant was untenable. From so much of the court's judgment so adjudging their contention ill-founded, both Mrs. Henning and the infant appellant have appealed.

In the pleadings attacking the proposed sale of the personal property and to which a demurrer was sustained, Mrs. Henning claimed that some books, chests, and a piano, incorporated in the proposed sale, were not her property but belonged to certain other named parties. The court declined to eliminate these articles from the sale, and Mrs. Henning is also complaining on this appeal of this action of the court.

This case was finally submitted for judgment of foreclosure of the realty mentioned, in October, 1926, with leave to the parties litigant to file proof theretofore taken. Before the submission, however, the trustees appointed in the previous August filed an intervening pleading, in which they set out their appointment as trustees and the fact that since such appointment they had leased the two farms covered by the mortgage of 1923 to a man by the name of Bayless for a period of 3 years, with privilege on his part of renewal for a period of five years more at an annual rental of $2,900, subject to a credit of as much as $400 per annum, should the tenant expend that much on repairs to the leased premises. They prayed that their rights as trustees be preserved by the court. A demurrer of the bank was sustained to this pleading of the trustees.

On the final submission, the court adjudged that Mrs. Henning owned a life estate in Allendale and ordered it sold. By the same judgment, he ordered her right "to receive the rents and profits from the Merriwether farm for and during her life" also sold. From this part of the judgment covering the sale of the realty the trustees, Mrs. Henning and the infant appellant appeal. Addressing ourselves to the claimed error in that part of the judgment which ordered a sale of realty, we find that the contention of the appellants is that the trial court should not have ordered, as it did, a sale of "the life estate" of Mrs. Henning in the Allendale farm, but only a sale of "her right to receive the rents and profits" from that farm "during her life." Appellants make the same contention with regard to the Merriwether farm. The court, however, did not in its judgment order a sale of "a life estate" in the Merriwether farm, but only Mrs. Henning's right "to receive the rents and profits" from that farm "during her life." As this is exactly what the appellants say here ought to have been done with regard to this Merriwether farm, and as the creditors of Mrs.

Henning are prosecuting no cross-appeal, but are satisfied with the judgment, we need not further discuss the correctness of the court's judgment in this regard. Appellant's contention with regard to the Allendale farm, as stated, is based on the following expressions of this court in our former opinion construing what estate Mrs. Henning took in this farm:

"The only interest in the land that is devised to the daughter (Mrs. Henning) by this will is that the rents and profits shall be paid to her, or if she desires to live upon the farm she may control and operate it while she lives. All this must take place in her lifetime. What is devised to her is therefore only a devise of the rents and profits for her life. For plainly, under the will, at her death the rents and profits are to be paid to her daughter or her issue, if she leaves such issue, for the trust terminates at her death. As Mrs. Henning takes under this will nothing but the right to receive the rents and profits of her lifetime, her interest is necessarily only a life estate." 214 Ky. 409, 283 S. W. 414.

While it is true this court said, as set out in the excerpt quoted, that Mrs. Henning took under the will of her mother "nothing but the right to receive the rents and profits of her lifetime," this phrase is at once explained by what immediately follows, which is, "her interest is necessarily only a life estate." The language of an opinion must be construed as a whole, and the meaning of an opinion is not to be warped by expressions culled here and there, but is to be arrived at by a just consideration of them all. Mrs. Henning had the right, under her mother's will, to live upon this farm, if she wished, and to occupy, control, manage and operate it. Or, if she chose, she could have it managed and run for her, or rented out and have the rents and profits paid to her. But these rights of hers ceased when she died. Plainly, this was a life estate, and the former opinion, fairly read, so holds.

We do not understand the appellant as contending that whatever estate Mrs. Henning did have in the Allendale farm could not be sold in this foreclosure proceeding, their contention being confined to what was the character of that estate; but if they did, there would plainly be no merit in such a contention. The former opinion

expressly held "her (Mrs. Henning's) life estate may be subjected to the payments of her debts," which holding is in accord with the provisions of section 2355 of the Kentucky Statutes as heretofore construed by this court. See Eastland v. Jordan, 3 Bibb 186, construing the act of 1796, found in 1 Littell 572, which is substantially the same as the present section 2355 of the statutes, and Showalter v. Nunnelley Co., 201 Ky. 595, 257 S. W. 1027. In this connection, however, appellants argue that the court erred in sustaining a demurrer to the intervening pleading of the trustees, Bell and Ross, and in ordering a sale of the realty without Bayless, the tenant, having been made a party to these proceedings. No one is making any complaint of this score except the appellants. That the pleading of the trustees was defective is apparent on its being read, for, in setting up their leasing of the premises in question, they nowhere said that Mrs. Henning had consented to such leasing. Under the will of Mrs. Henning's mother, their power to lease was dependent on the consent of Mrs. Henning to such lease as entered into, and without that consent their lease was invalid. There was no showing to the court that a valid lease had been executed by these trustees, and hence the court did not err in sustaining the demurrer to this pleading and in declining to make Bayless a party to these proceedings.

It therefore follows that the chancellor committed no error in ordering a sale of the realty as he did.

So far as the personalty is concerned, it is obvious that none of the appellants may complain of the sale of those articles which they claim belonged to third parties. The appellants are not prejudiced by such a sale. They earnestly insist, however, that the cream separator, the lighting plant and the milling machine were fixtures, so attached to the realty as to be such and not personalty. The evidence taken on the appellants' exceptions to the commissioner's report of the sale of the personalty, which included these articles, shows that Mrs. Henning bought them and installed them on the Allendale farm. The lighting plant was installed in a building in the yard of the farm and was affixed by machine bolts imbedded in a concrete base. The milling plant was also installed in a building in the yard and was affixed with leg screws driven into wooden sleepers imbedded in the concrete floor. Both the lighting plant and the milling plant were

easily removable, without any damage whatever to the building or realty, by loosening the bolts and screws and lifting the machines off their bases. The cream separator was bolted down with three-eighths inch bolts, and, too, was easily removable without damage to the premises. In determining whether fixtures are in law immovable or not, there are, as the parties to this appeal agree, three general tests: First, annexation to the realty, either actual or constructive. Secondly, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated. Thirdly, intention to make the article a permanent accession to the freehold. These tests, set out in Ewell on Fixtures, were adopted by this court in the case of Clore v. Lambert, 78 Ky. 224, in which case we said that the intention with which the annexation is made is a controlling element. This idea of intention was emphasized in the case of Henry Clay Fire Insurance Co. v. Barkley, 160 Ky. 153, 169 S. W. 747, which cited and relied on the earlier case of Davis v. Eastham, 81 Ky. 116. To the same effect is 26 C. J. 651. There was no showing in this case that Mrs. Henning intended to make these articles a permanent accession to the freehold. On the contrary, her mortgaging of them indicated a contrary intention. Furthermore, at least in the absence of proof showing a contrary intention, the law allows as between the landlord and tenant, and as between the life tenant and remaindermen, the greatest latitude and indulgence in favor of the presumption that particular articles are to be considered as personal chattels, rather than as part of the freehold or inheritance. 26 C. J. 695. Especially is this so as to what are known as domestic and ornamental fixtures, which are such fixtures as are annexed to a dwelling in order to render it more comfortable and attractive as such. It is public policy to permit the tenant for years or for life to make the most profitable and comfortable use of the premises demised that can be obtained consistently with the rights of the owner of the freehold; 26 C. J. 704. And so it has been held in Hays v. Doane, 11 N. J. Equity, 84, that a gasometer, an apparatus for generating gas, is a domestic fixture removable by the tenant. It is impossible to distinguish a lighting plant such as we have here from such a gasometer. It plainly was a domestic fixture, and so personalty. The case of Johnson's Ex'r v. Wiseman, 4 Metc. 357, 83 Am. Dec.

475, relied on by appellant as establishing a contrary doctrine was explained by this court in Clore v. Lambert *supra,* which pointed out that the Wiseman case went off on a question of estoppel. The milling plant and cream separator were brought onto the place in connection with the dairy business which Mrs. Henning was operating. Like the lighting plant, they were easily removable. That Mrs. Henning considered them personalty is plain from this record, and as she was the life tenant, the legal presumption, at least in the absence of proof of contrary intention, is to the same effect. We are therefore of the opinion the court committed no error in declining to hold that these articles were realty, and not personalty.

Appellants also complain that the judgment failed to cancel the 1924 deed of trust and the bonds issued thereunder. But the judgment specifically reserved the case "for further orders and proceedings as to all matters not hereinabove adjudicated, and for such other orders and proceedings as may hereafter be necessary and proper." It is apparent that, on timely application, if Mrs. Henning is entitled to a cancellation, this clause in the judgment reserves her the right to obtain it.

It is also complained that certain creditors were included in the judgment enforcing the mortgage who had not actually signed this mortgage. Mrs. Henning cannot complain of this because the property sold, real and personal, did not bring enough to pay the secured creditors in full, even though these creditors who had not signed the mortgage are eliminated. Mrs. Henning owes the debts in question, whether secured or not, and if the secured creditors are not complaining because possibly some unsecured creditors are put on a par with them, certainly Mrs. Henning cannot complain. For the same reasons she is not prejudiced because five creditors who were parties to the mortgage were not included in the judgment.

Complaint is further made that S. M. Long & Sons were given an additional judgment enforcing a mortgage on a separate tract of land on which the other creditors of Mrs. Henning had no lien. The pleadings on which this judgment was entered have been omitted from the record, and in their absence, under familiar law, it will be presumed that they support it. But beyond this her complaint seems to be that Long was not entitled to enforce his mortgage on the other property until the mort-

gage of August, 1923, had been enforced. This is contrary to the elementary rule of the marshalling of assets. Other errors are claimed, but they are not of sufficient importance to merit discussion. The judgment is affirmed.