# Morrow Manufacturing Company v. Race Creek Coal Company, et al.

(Decided January 31, 1928.)

## Appeal from Henderson Circuit Court.

1. Chattel Mortgages.—Sale contract, providing for retention of title to coal-shaking screen until it be fully paid for, operates only as a "mortgage" in Kentucky.

2. Fixtures.—One test to determine what is an immovable fixture is intention of party making the annexation to make the article a permanent accession to the freehold, inferable from nature of article affixed, relation and situation of party making annexation, policy of law in relation thereto, structure and mode of annexation, and purpose or use thereof.

3. Fixtures.—Coal-shaking screen held immovable fixture, as between seller retaining lien for purchase price and mortgagee of land on which it was placed, and mortgagee entitled to superior lien, where screen was attached to land after execution of mortgage thereon, and was necessary part of coal mine, and intended as permanent annexation, and its removal would impair security of mortgage.

4. Judgment:—Judgment entered on the last day of one term, but not signed until the first day of the next term, is valid when signed.

VANCE & HEILBRONNER for appellant.

YEAMAN, PENTECOST & YEAMAN, and HENSON & TAYLOR for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

On January 1, 1924, Mrs. Emma Blair and others, the owners of a coal mine in Henderson county, executed to the Ohio Valley Banking & Trust Company a mortgage upon the property to secure a debt of $44,000. After this they sold the property to the Race Creek Coal Company. The Race Creek Coal Company, on October 25, 1924, bought from the Morrow Manufacturing Company an improved shaking screen, etc. It was stipulated in the contract that the title to the property should remain in the Morrow manufacturing Company until paid for. The contract, which was not acknowledged by any one, was improperly recorded in the county clerk's office. The trust company brought this suit to foreclose its mortgage, which was duly recorded when made. The Morrow Com-

pany set up the claim of its right to remove the screen, etc., which it sold the coal company and had been used by it in delivering its coal; there being a balance due the Morrow Company of about $8,000 on it. The whole property was sold, and brought $27,000. It was appraised at $40,000.

Upon final hearing the circuit court entered judgment dismissing the petition of the Morrow Company, and adjudging the lien of the trust company, under its mortgage, superior. The judgment of the court finds as a fact that the property in question "became and is now a permanent fixture, and was and is so attached to the freehold as to become, and all of it has become and is now, a part thereof, and cannot be removed therefrom without damaging the said mine, nor without greatly depreciating the value of the remainder of said coal mine property, and impairing the value of the security of the defendant, Ohio Valley Banking & Trust Company." The Morrow Company appeals.

It is well settled that contracts like that made by the Morrow Company only operate as a mortgage in Kentucky. It is shown from the proof that the Race Creek Coal Company was operating its mine with a gravity screen. The agent of the Morrow Company came to the premises. The condition of the old tipple was poor, and for that reason he recommended a steel subframe for supporting the self-contained screening unit. The property was sold to be put just where it was. The sellers sent an experienced man along to install the machinery. The Race Creek Coal Company paid him for his services, and also made some payments on the price of the property. They took out the timbers that were holding up the shed. They put in a concrete base, after digging down in the ground for a foundation, and while the concrete was soft put bolts in the concrete by means of which the steel subframe was fastened to the concrete foundation. On this foundation the shaker screen and other parts of the structure were placed, and steel posts were set to hold up what was above. The structure, when placed in position, was an integral part of the machinery by which the coal was taken from the bottom of the shaft, and, after passing through the screen, was dumped in the railroad cars. There was no other way to operate the mine after this structure was put in. To take it away would be simply to stop the operation of the mine until another tipple could be built, at a cost of $10,000.

In Clore v. Lambert, 78 Ky. 224, Clore bought a house and lot from Lambert. After this he bought an engine and some machinery and placed them in the building. In stating the rule to determine what are immovable fixtures, the court, among other things, stated this as one test:

"The intention of the party making the annexation to make the articles a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, and the policy of the law in relation thereto, the structure and mode of the annexation, and the purpose or use for which the annexation has been made."

In that case it was held that the engine was not a fixture. The case turns on these words, as stated by the court:

"What evidence is there then that Clore and Clay intended to make this machinery a permanent accession to the realty? The burden was upon appellee to show that his lien reached this property, and in this we think he has failed."

In Bank of Louisville v. Baumeister, 87 Ky. 8, 7 S. W. 170, Spalding made a contract for the purchase of a lot; then made a contract for the erection upon the lot of a warehouse. Adhering to the rule laid down in the former case as to fixtures, the court held that the warehouse was intended by Spalding as a permanent improvement of the estate which he subsequently purchased, and that the lien of the mortgage was superior. The same rule was followed in Reyman v. Henderson National Bank, 98 Ky. 748, 34 S. W. 697, in the case of a mortgage upon a brewery. The court said:

"It will scarcely be said that the machinery in a factory, that may be removed at any time without an injury to the building, would not pass by a sale of the factory; on the contrary, it has often been held otherwise, and the purposes for which the machinery is put into the building will determine whether or not it becomes a fixture and passes to the purchaser."

The same rule was recognized in United States Cast Iron Pipe & Foundry Co. v. Henry Vogt, etc., Co., 182 Ky. 473, 206 S. W. 806; but the mortgage lien was ad-

judged not superior because it was not shown that to remove the machinery would diminish the mortgage security. De Charette v. Bank of Shelbyville, 218 Ky. 698, 291 S. W. 1054, was a controversy between the life tenant and the remainderman, and in that case there was nothing to show that the things in controvery were intended as a permanent addition to the real estate. In Westinghouse Electric Co. v. Citizens', etc., Railroad Co. (Ky.) 68 S. W. 463, the Westinghouse Company supplied the electrical appliances necessary to electrify a street railway. Holding that the lien of the mortgage was superior, the court said:

"Besides, the law is well settled that property added to the plant of a street railroad, and which becomes an essential and integral part of its road, passes under a mortgage previously executed and recorded covering its entire property and road constructed and to be constructed, although furnished under a contract by which the title was to remain in the seller until payment (was) made. See Porter v. Steel Co., 122 U. S. 283, 7 S. Ct. 1206, 30 L. Ed. 1210, and Phœnix Iron-Works Co. v. New York Security & Trust Co., 28 C. C. A. 76, 83 F. 759."

There can be no substantial distinction between the case of the street railway and the case before us. The structure here was placed upon the property as a permanent addition. It was an essential part of the machinery for getting the coal out of the mine, and when fixed to the land became a part of it. While there is a conflict of authority on the question, the conflict is in a large measure due to the difference in the facts or the statutes before the court. In some states, such contracts by law pass no title to the purchaser until the price is paid. In others, the statutes are not the same as ours as to the effect of a prior recorded mortgage; and the weight of authority supports the rule that the lien of the mortgage is superior, where the structure is a necessary part of a plant and intended as a permanent annexation to the property, and its removal will impair the security of the mortgage. Planters' Bank v. Lummus, etc., Co., 132 S. C. 16, 128 S. E. 876, 41 A. L. R. 592, and notes; 11 R. C. L. p. 1085; 26 C. J. p. 484. There is a distinction between cases in which the controversy is between the mortgagee and mortgagor, and those cases where the controversy is between the mortgagee and the seller of

a chattel retaining a lien thereon.  The court only holds that the facts shown bring this case within the rule above stated.

While the judgment was entered on the last day of the term, and not signed until the first day of next term, it is valid when so signed.  Union Gas Co. v. Indian, etc., Co., 203 Ky. 521, 263 S. W. 1, and cases cited.

Judgment affirmed.  Whole court sitting.